Terry J. WILKINS ex rel. UNITED STATES of America, Plaintiff,

v.

STATE OF OHIO, et al., Defendants.

No. C2-94-270.

United States District Court,
S.D. Ohio,
Eastern Division.

Jan. 31, 1995.

Alexander M. Spater, Spater, Gittes, Schulte & Kolman, Columbus, OH, for plaintiff.

Jack W. Decker and Pamela J. Gordon, Asst. Attys. Gen., Employment Law Section, Columbus, OH, for defendants.

### OPINION AND ORDER

GRAHAM, District Judge.

This is an action filed by plaintiff, Terry J. Wilkins, under provisions of the False Claims Act, 31 U.S.C. §§ 3729 and 3730. The named defendants are the State of Ohio, the Ohio Department of Development ("ODOD"), ODOD Director Donald E. Jakeway, ODOD Assistant Director Vincent Lombardi, Roberta Garber, Deputy Director of ODOD's Community Development Division, and Melanie Buller, Complaint Chief of the ODOD Audit Office. Plaintiff is pursuing a *qui tam* action on behalf of the United States Government and himself to recover damages for false claims allegedly made by the defendants against the United States in violation of 31 U.S.C. § 3729(a)(1), (2), (3) and (7). Plaintiff, the former Chief of ODOD's Office of Community Services ("OCS"), also alleges that he was discharged in violation of 31 U.S.C.

§ 3730(h), the "whistleblower" provision of the False Claims Act, because he acted in furtherance of the False Claims Act by investigating, uncovering and reporting violations of state and federal law and the misuse of federal funds.

On October 11, 1994, defendants State of Ohio, ODOD, Jakeway and Lombardi moved to dismiss the complaint pursuant to Fed. R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted. On November 15, 1994, plaintiff filed an amended complaint. On December 5, 1994, a motion to dismiss the amended complaint was filed, and was joined in by all of the defendants.

A complaint will not be dismissed pursuant to Rule 12(b)(6) for failure to state a claim unless it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The court must construe the complaint in a light most favorable to the plaintiff and accept all well-pleaded allegations in the complaint as true. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A motion to dismiss under Rule 12(b)(6) will be granted if the complaint is without merit due to an absence of law to support a claim of the type made or of facts sufficient to make a valid claim, or where the face of the complaint reveals that there is an insurmountable bar to relief. *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697 (6th Cir.1978).

The False Claims Act provides penalties for one who knowingly presents a false claim to the government, and also offers incentives to whistleblowers who expose the fraud. 31 U.S.C. §§ 3729(a), 3730. Where, as in the present case, the government elects not to intervene, the *qui tam* plaintiff may proceed with the action as the government's assignee. Plaintiff has alleged in his amended complaint that defendants have committed acts within the purview of 31 U.S.C. § 3729(a)(1), (2), (3) and (7). These provisions read in part as follows:

(a) **Liability for certain acts.** Any person who—

(1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false and fraudulent claim for payment or approval;

(2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;

(3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid;

\* \* \* \* \* \*

(7) knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government,

is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person[.]

■ The elements of a claim under § 3729(a)(1) are: (1) that the defendant presented or caused to be presented to an agent of the United States a claim for payment; (2) that the claim was false or fraudulent; (3) that the defendant knew that the claim was false or fraudulent; and (4) that the United States suffered damages as a result. *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Provident Life & Accident Ins. Co.*, 721 F.Supp. 1247, 1258–1259 (S.D.Fla.1989).

■ The elements of a claim under § 3729(a)(2) are: (1) that the defendant made, used, or caused to be made or used, a record or statement to get a claim against the United States paid or approved; (2) the record or statement and the claim were false or fraudulent; (3) the defendant knew that the record or statement and the claim were false or fraudulent; and (4) the United States suffered damages as a result. *Id.* at 1259.

■ The elements of a claim under § 3729(a)(3) are: (1) that the defendant

knowingly conspired with one or more persons to get a false or fraudulent claim allowed or paid by the United States; (2) that one or more of the conspirators performed any act to effect the object of the conspiracy; and (3) that the United States suffered damages as a result of the false or fraudulent claim. *Id.*

■ A claim under § 3729(a)(7) requires proof: (1) that the defendant made, used, or caused to be used a record or statement to conceal, avoid, or decrease an obligation to the United States; (2) that the statement or record was false; (3) that the defendant knew that the statement or record was false; and (4) that the United States suffered damages as a result. *Id.*

■ The knowledge element of the above claims is defined in 31 U.S.C. § 3729(b). Under that section,

the terms "knowing" and "knowingly" mean that a person, with respect to information—

(1) has actual knowledge of the information;

(2) acts in deliberate ignorance of the truth or falsity of the information; or

(3) acts in reckless disregard of the truth or falsity of the information,

and no proof of specific intent to defraud is required.

Mere negligence or innocent mistake is insufficient to satisfy the above standards for knowledge. *United States ex rel. Hagood v. Sonoma County Water Agency*, 929 F.2d 1416, 1421 (9th Cir.1991). Rather, defendant must act at least with "deliberate ignorance" or "reckless disregard" of the truth or falsity of the information.

Although plaintiff must prove that the defendant acted with knowledge as that term is defined in § 3729(b), plaintiff is not required to prove that the defendant acted with the intent to deceive. *Hagood,* 929 F.2d at 1421. The gist of the violation is not an intent to deceive but the knowing presentation of a claim, record or statement that is either "fraudulent" or "false" and the requisite intent is the knowing presentation of what is "known to be false" or "a lie." *Wang ex rel.*

*United States v. FMC Corp.*, 975 F.2d 1412, 1421 (9th Cir.1992) (citing *Hagood*, 929 F.2d at 1421). Thus, the scienter requirement is something less than the elements of fraud at common law. *Wang*, 975 F.2d at 1420.

■ A claim against the United States is any demand upon the government for the payment of money or the transfer of property. *United States v. Howell*, 318 F.2d 162 (9th Cir.1963). A "claim" includes requests or demands made to a contractor, grantee, or other recipient of government funds where the United States Government provides any portion of the money which is requested or demanded. 31 U.S.C. § 3729(c).

■ Finally, while § 3729(a) authorizes the recovery of any damages sustained by the United States upon proof of those damages by the plaintiff, no damages need be proved in order to recover the civil penalty of $5,000 specified in that section. *Hagood*, 929 F.2d at 1421.

■ Defendants assert that the amended complaint should be dismissed because plaintiff has not complied with the requirement of Fed.R.Civ.P. 9(b) that fraud be pleaded with particularity. Rule 9(b) has been construed as requiring a plaintiff to allege the time, place, and content of the misrepresentation. *Coffey v. Foamex L.P.*, 2 F.3d 157 (6th Cir. 1993). However, the Sixth Circuit also considers the particularity requirement against the more general policy stated in Fed. R.Civ.P. 8 which favors simple, concise and direct allegations in pleading. *Michaels Building Co. v. Ameritrust Co., N.A.*, 848 F.2d 674 (6th Cir.1988). Thus, the Sixth Circuit has stated that "the purpose undergirding the particularity requirement of Rule 9(b) is to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading." *Id.* at 679.

Plaintiff alleges in the amended complaint that he was Chief of OCS from April, 1988 until he was terminated in February of 1993. The OCS is responsible for the administration of the Community Services Block Grant Program, a federal low-income assistance program funded by the United States Department of Health and Human Services ("HHS"). The OCS is also responsible for monitoring various community action agencies which receive funds through the Block Grant Program. He states that in 1990, defendant Garber ordered OCS to cut back on its monitoring of these agencies, and that he observed irregularities in the manner in which state and federal policies were monitored and enforced by ODOD. Plaintiff alleges that during the relevant time period, he encountered and investigated violations of state and federal regulations and misuse of federal funds by six of these community action agencies in particular.

Plaintiff alleges various violations committed by the Lima–Allen Community Action Committee which were revealed by an audit obtained by OCS at plaintiff's direction in 1991. Plaintiff further asserts that after discovering serious violations of federal regulations and possible criminal wrongdoing, he brought the matter to the attention of his supervisors, defendants Jakeway, Lombardi and Garber, and urged them to terminate the Committee's funding. However, this agency's funding was not terminated.

Plaintiff further alleges that a state audit in 1990 revealed irregularities in the expenditures of the Cincinnati–Hamilton County Community Action Agency. He also sets forth instances of violations by the Council of Economic Opportunities in Greater Cleveland as a result of a practice which has been in effect from 1990 to the present. According to plaintiff, the State of Ohio was aware of these problems but continued to fund this agency. Plaintiff further alleges that there were problems in 1992 due to the failure of the Hancock, Harding, Williams, Paulding Community Action Agency to pay taxes and expenses, in which ODOD did not intervene. He also cites irregularities on the part of the Ohio Weatherization Training Institute in 1989 or 1990, resulting in the misuse of federal funds in violation of law, and the alleged misuse of federal funds by the Montgomery County Community Action Agency in violation of law.

Plaintiff alleges that between 1987 and 1993, defendants State of Ohio, ODOD, Jakeway, Lombardi, Garber and Buller continued to provide funding to these agencies despite

these pervasive violations of state and federal laws and regulations and the misuse of federal funds. He further alleges that these defendants destroyed and hid documents, tried to cover up the misuse of federal funds, refused to conduct proper audits or investigations, discouraged and intimidated other employees who wanted to conduct thorough audits, and intimidated, harassed and disciplined employees such as plaintiff who reported the misuse of federal funds. Plaintiff further asserts that defendants State of Ohio, ODOD, Jakeway, Lombardi and Garber prepared and submitted applications to HHS for funds under the Block Grant Program in which they certified that the funds would be used for the purposes set forth in 42 U.S.C. § 9904(a) and (c), and further certified that the State of Ohio would monitor the expenditures and provide proper fiscal control and accounting procedures to ensure that the funds would be spent in conformity with federal statutes and regulations. Plaintiff alleges that as a result of these certifications and applications, federal Block Grant funds were disbursed to the State of Ohio. Plaintiff asserts that the defendants knew the applications and certifications were false, or acted in reckless disregard for the truth of the information in the applications, since they allegedly knew that funds had been improperly used in the past and would be in the future, and further knew that they would not provide fiscal, accounting and monitoring procedures to ensure compliance with the law. Plaintiff further alleges that the defendants knew that the State of Ohio was required to inform the United States Government that funds were improperly used and to repay the Government for such expenditures, but that they did not report the misuse of federal funds and acted to prevent repayment to the Government.

The amended complaint does not comply with the particularity requirements of Rule 9(b). Nonetheless, plaintiff argues that he should not be held to the requirements of Rule 9(b) because the information he needs to provide specific information is within the control of the defendants. Plaintiff asserts that he is no longer employed at OCS and that he does not have access to the documents and records in the possession of OCS,

ODOD and the other defendants. An exception to Rule 9(b)'s particularity requirement exists where the relevant facts lie exclusively within the knowledge and control of the opposing party. *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 489 (6th Cir.1990). In such a case, pleading upon information and belief is permissible, but plaintiff must still plead a statement of facts upon which his belief is based. *Id.*

The court concludes that this is an appropriate case in which to apply the exception to Rule 9(b). Defendants do not contend that plaintiff has equal access to the documents he seeks, and in fact have filed a motion for a protective order to prevent discovery while their motion to dismiss is pending. Rather, they argue that plaintiff should be expected to allege the relevant facts based on memory. Plaintiff logically responds that he has not worked at OCS since February of 1993 and that he can hardly be expected to remember the exact dates of grant applications or reports. The court further notes that this is not a case in which a plaintiff completely unfamiliar with ODOD or OCS has brought a *qui tam* action. Rather, plaintiff has alleged that he was the chief of OCS for almost five years and that it was a part of his job responsibilities to monitor the use of federal funds by the participating community agencies. This gives greater weight to plaintiff's representation that records and documents relevant to his claims will be found in the defendants' possession. Further, plaintiff has alleged not only that the defendants made fraudulent statements, but also that they made statements which are merely false, which requires a lesser standard of proof than fraud. It would be appropriate to apply the exception to these latter allegations.

The court finds that the amended complaint is sufficient under the exception to Rule 9(b) to assert a claim under § 3729(a)(1) and (2) against defendants State of Ohio and ODOD, and against defendants Jakeway, Lombardi and Garber in their official capacities. The allegations are sufficient to provide these defendants with fair notice of the substance of plaintiff's claims, and plaintiff has pleaded sufficient facts to form a basis for his

belief that defendants submitted false or fraudulent claims.

Defendants argue that plaintiff seeks to hold them responsible for the fraud of the community action agencies. However, this is not what plaintiff alleges. The claims upon which plaintiff relies are not the claims for funds submitted by the various community action agencies to ODOD. Rather, plaintiff has alleged that the defendants submitted a claim to the HHS for grant monies, and that they did so by means of an application in which they made false statements which they knew to be false or with reckless disregard for whether the statements were true or false. Allegedly, defendants falsely certified that the grant monies would be used for certain specified purposes and that the State of Ohio would provide proper monitoring of the use of funds by community action agencies. Plaintiff further alleges that as a result of these applications and statements, the State of Ohio received Block Grant program funds which were distributed to other agencies.

■ Defendants also characterize plaintiff's claim as a predictive false claim, that is, that defendants were obliged to predict fraudulent claims or the misuse of funds by community action agencies in the future. However, it is not impossible that plaintiff could produce evidence that defendants did know in advance that the funds would not be properly used or disbursed by the State of Ohio, or that they knew that the State of Ohio would not monitor the use of funds, hypothetically speaking, because the State of Ohio had no intention of doing so or because defendants knew that the monitoring procedures were ineffectual. If plaintiff can prove his allegations, such false statements would satisfy the requirements for a false claim under § 3729(a)(1) and (2). The court cannot say, particularly in light of the liberal definition of "knowing" contained in the False Claims Act, that plaintiff could prove no set of facts to establish his claims under subsections (a)(1) and (a)(2) so as to warrant dismissal at this stage of the proceedings.

The court does find that the amended complaint does not contain sufficient allegations of defendant Buller's involvement in the application process so as to state a claim against her under subsections (a)(1) and (a)(2). The court further notes that the amended complaint contains no allegations indicating that plaintiff seeks to hold the individual state officials liable in their personal as well as their official capacities. The court finds that the allegations in the amended complaint are not sufficient to allege a claim against these officials in their personal or individual capacities, and that they remain in this action solely in their official capacities.

■ Defendants argue that plaintiff has failed to allege sufficient facts to show that defendants made a claim against the United States. Defendants rely on *United States v. Azzarelli Construction Co.,* 647 F.2d 757 (7th Cir.1981). *Azzarelli* involved a bid-rigging conspiracy which resulted in inflated claims for payment for highway construction work being submitted to the State of Illinois. The State had received funds from the federal government for use in the highway construction projects. However, the court held that since the federal highway program provided for a fixed contribution to the states, as opposed to a program with open-ended, unlimited funding such as Medicaid where the government reimburses providers for each claim made, the federal treasury was insulated from any overcharges, and therefore it was the State of Illinois rather than the federal government which sustained the injury from the rigged bidding. *Id.* at 761–762. The import of *Azzarelli* is that once federal funds in a fixed amount are distributed to a state for use in state programs, the federal government did not have a sufficient interest in those funds to sue grantees or contractors who submitted false claims to the state for those funds under the False Claims Act.

In response to *Azzarelli,* Congress enacted 31 U.S.C. § 3729(c) as part of the 1986 amendments to the False Claims Act. As previously noted, subsection (c) defines a "claim" as including requests for funds made to a grantee or recipient of federal funds so long as the United States Government has provided .any of the money which is requested from the grantee. The definition makes no distinction between money provided as a fixed sum and money provided under an

open-ended program, but rather is broad enough to include any request for money which was originally obtained from the United States Government. The legislative history indicates that Congress intended to to overrule *Azzarelli* through subsection (c) by allowing the United States to use the False Claims Act "to reach fraud perpetuated on federal grantees, contractors or other recipients of Federal funds." Sen.Rep. No. 99–345, 99th Cong., 2d Sess. 22, *reprinted in* 1986 U.S.Code Cong. & Admin.News 5266, 5287. Congress did so not simply by allowing the United States to proceed against beneficiaries further down the chain of distribution, but by redefining what constitutes a "claim" under the act sufficient to give the federal government standing to sue. That definition is broad enough to include any funds provided directly or indirectly by the United States, regardless of whether the grant was in a fixed amount or open-ended.

Even if it is assumed that the discussion in *Azzarelli* concerning injury to the government survived the passage of § 3729(c), the situation in *Azzarelli* is distinguishable from the facts pleaded in the instant case. The defendants are the State of Ohio and the state agency and officers who allegedly made a claim for funds under the Block Grant Program directly to the federal government, which claim contained false statements.

Further, the federal government exercises significant control over the administration of the Block Grant Program. Upon applying for funds under the Program, a state must certify that the funds will be used for the purposes described in 42 U.S.C. § 9904(c)(1), and that the boards of community action agencies will be made up of certain specified members of the community, as specified in 42 U.S.C. § 9904(c)(3). A state must also agree that fiscal control and fund accounting procedures will be established to ensure the proper disbursal of federal funds, including an annual audit and other procedures for monitoring the assistance provided. 42 U.S.C. § 9904(c)(9). A state is obligated to repay to the United States amounts which were not spent in accordance with federal law, and the Secretary of HHS is authorized to offset amounts which were improperly spent

against future grants. 42 U.S.C. § 9904(g). The Comptroller General of the United States is authorized to evaluate the use of grant monies by the states. 42 U.S.C. § 9904(h). The Secretary is also authorized to withhold funds from states who do not properly use grant funds, and is required to conduct investigations of the use of funds in several states each year. 42 U.S.C. § 9908(a), (b). Similar factors led the court in *United States v. Killough,* 625 F.Supp. 1399 (M.D.Ala.1986), *rev'd on other grounds,* 848 F.2d 1523 (11th Cir.1988) to distinguish *Azzarelli* and to find that there was a sufficient burden on the federal treasury to permit suit under the False Claims Act. The court concludes that plaintiff has alleged an injury to the federal treasury sufficient to bring this case within the scope of the Act.

■ Plaintiff also seeks to assert a claim under § 3729(a)(3). The court concludes that even if the relaxed standards applicable under the Rule 9(b) exception are employed, the amended complaint fails to plead a conspiracy under § 3729(a)(3). Plaintiff alleges in conclusory terms that the defendants conspired to defraud the United States, but has pleaded no facts showing the existence of an agreement between two or more of the defendants to defraud the government. *See Stinson,* 721 F.Supp. at 1259. Defendants' motion to dismiss this claim is well taken.

■ Plaintiff also seeks to assert a claim under § 3729(a)(7). Under that section, plaintiff must allege that defendants knowingly made, used or caused to be used a false statement or record to conceal, avoid or decrease an obligation of the United States. Plaintiff alleges that the defendants knew that the State of Ohio was required by federal statutes and regulations to inform the United States Government that funds were improperly used and to repay these funds, but that defendants acted to prevent repayment and did not inform the United States about the misuse of funds. Plaintiff further alleges that defendants destroyed and hid documents, tried to cover up the misuse federal government funds, and refused to conduct proper audits.

Plaintiff argues that a violation of § 3729(a)(7) can occur where the state agen-

cy does not report the improper use of federal funds when it was obligated to do so. Plaintiff relies on *United States ex rel. Stevens v. McGinnis, Inc.,* Slip Op. No. C–1–93–442, (S.D.Ohio 1994), in which the court addressed the defendant's motion for summary judgment on a "reverse false claim" under subsection (a)(7). The court, *Id.* at 13, noted that subsection (a)(7) "permits a 'reverse false claim' to be asserted where a defendant has omitted to disclose information to the Government that concealed or avoided its obligation to pay the cleanup costs" for violations of the Clean Water Act. The court held, *Id.* at 15, that violations of the reporting requirements of the Clean Water Act which arguably are misrepresentations to the Government give rise to liability under subsection (a)(7). The court further stated, *Id.* at 17, that defendant's vessel logs, from which documentation of illegal dumping was knowingly omitted, might constitute a misrepresentation for the purpose of avoiding payment to the United States.

The import of *McGinnis* is that an omission of information from records which are required to be maintained may constitute a false statement or record under the False Claims Act. However, that case does not hold that the mere failure to record or report violations of the law which might result in an obligation to pay money is sufficient in itself to violate subsection (a)(7). Rather, the court in *McGinnis* indicted at p. 18–19 of the slip opinion that in order to recover under subsection (a)(7), the plaintiff must also prove that the false information, be it in the form of an affirmative statement or an omission, was knowingly submitted by the defendant to the United States Government for the purpose of avoiding a debt or obligation to the government. The court noted, *Id.* at 19, that this might have occurred when a McGinnis vessel was boarded and the log book inspected or when McGinnis was otherwise questioned by the government. The court in *McGinnis* cited *United States ex rel. Sequoia Orange Co. v. Oxnard Lemon Co.,* Slip Op. Nos. CV–F–91–194OWW, CV–F91–195OWW (E.D.Calif.1992), which involved the submission of false reports which failed to disclose violations of law and which there-

fore insulated the defendants from fines and penalties.

The legislative history of the 1986 amendment to the False Claims Act, which included new § 3729(a)(7), reveals that Congress considered the case law concerning "reverse false claims" and "added a clarification that an individual who makes a material misrepresentation to avoid paying money owed the Government should be equally liable under the Act as if he had submitted a false claim." Sen.Rep. No. 99–345, 99th Cong., 2d Sess. 15 *reprinted in* 1986 U.S.Code Cong. & Admin.News 5266, 5280, 5283. As the Report states, *Id.,* at 18, 5283, "[t]he question of whether the False Claims Act covers situations where, by means of false financial statements or accounting reports, a person attempts to defeat or reduce the amount of a claim or potential claim by the United States against him, has been the subject of differing judicial interpretations." The Senate Report includes a discussion of a case in which false reports were submitted, and also refers to "reverse false claims" as "claims to avoid a payment to the Government," *Id.* The Senate Report supports the conclusion that in order to have a "reverse false claim," the government has to be made aware of the false statement, misrepresentation or misleading omission in some fashion, *i.e.,* there has to be a "claim."

Under this interpretation of § 3729(a)(7), plaintiff's allegations that defendants destroyed documents, tried to cover up the misuse of funds, failed to conduct proper audits, and failed to inform the government about the improper use of funds, without more, are insufficient to state a claim under that subsection. The only documentation identified in the amended complaint as having been prepared by the defendants and submitted to or reviewed by the federal government consisted of the applications for grant funds. However, the amended complaint fails to allege that defendants were required to identify incidents of misspent funds or amounts due the government due to misspent funds on the application forms for new grant monies such that the failure to reveal this information on the application forms could be deemed a fraudulent omis-

sion. The amended complaint is devoid of any other allegations concerning records or statements which were false due to omissions submitted to or reviewed by the government. The bare allegation that "defendants did not tell the United States Government about the misuse of federal funds and they all acted to prevent repayment to the United States Government" is not sufficient to state a claim under § 3729(a)(7). Defendants' motion to dismiss this claim is granted.

Defendants have also moved to dismiss plaintiff's claim under 31 U.S.C. § 3730(h), the *qui tam* whistleblower provision. That section provides:

(h) Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole. Such relief shall include reinstatement with the same seniority status such employee would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. An employee may bring an action in the appropriate district court of the United States for the relief provided in this subsection.

Plaintiff alleges that he was "harassed, threatened, discriminated against in the terms and conditions of employment and terminated from his position at the Ohio Department of Development, because he acted in furtherance of the False Claims Act by investigating, uncovering and reporting the violations of state and federal regulations and the misuse of federal funds to the defendants and their agents, and the Ohio Inspector General." Amended Complaint, Para. 45.

 Defendants argue that plaintiff has failed to state a claim under § 3730(h) be-

cause he has not adequately alleged that he was engaging in protected activities by investigating matters within the realm of the False Claims Act. Section 3730(h) requires that the protected conduct be in furtherance of "an action under this section." This language has been construed as not requiring that a False Claims Act action actually be filed; rather, § 3730(h) also applies to investigation into matters which could legitimately lead to litigation. *Neal v. Honeywell Inc.*, 33 F.3d 860 (7th Cir.1994). While plaintiff does not specifically allege that he engaged in conduct "in furtherance of an action," he does allege that he engaged in conduct "in furtherance of the False Claims Act."

Defendants argue that the reference to "violations of state and federal regulations and the misuse of federal funds" is insufficient to allege matters within the scope of the False Claims Act. Viewing this language in isolation, that might be the case. However, plaintiff incorporates paragraphs 1 through 35 of the complaint as a part of this claim. Considering the complaint as a whole, there are sufficient facts to constitute allegation that plaintiff, in furtherance of an action under the False Claims Act, was investigating and reporting fraud perpetrated upon the United States Government through false or fraudulent claims being made for government funds.

 Defendants argue that plaintiff should not be permitted to pursue an action under 3730(h) because, rather than acting "on behalf of the employee," he was acting on behalf of the State because it was a part of his job to uncover irregularities in the use of federal funds. Although defendants cite cases discussing the "original source" provisions in 31 U.S.C. § 3730(e)(4), defendants state that they are not relying on "original source" provisions, but argue that the reasoning in those cases should be extended. Section 3730(e)(4) prohibits *qui tam* actions based on information which was publicly disclosed in judicial or administrative hearings or reports unless the action is brought by the United States or the person who was the original source of the information. In *United States ex rel. LeBlanc v. Raytheon Co.*,

913 F.2d 17 (1st Cir.1990), the court found that a government employee could bring an action under the False Claims Act based upon information that the employee obtained during the course of his employment. *See also United States ex rel. McDowell v. McDonnell Douglas Corp.,* 755 F.Supp. 1038 (M.D.Ga.1991); *Erickson ex rel. United States v. American Institute of Biological Sciences,* 716 F.Supp. 908 (E.D.Va.1989). However, the court in *Raytheon* went on to hold that a government employee could not qualify as an original source. *Raytheon,* 913 F.2d at 20.

In *United States ex rel. Williams v. NEC Corp.,* 931 F.2d 1493, 1501 n. 13 (11th Cir. 1991), the court rejected the reasoning of the First Circuit in *Raytheon* and criticized that court for relying on the "original source" exception in a case where no public disclosure had been found, thereby making consideration of the "original source" issue irrelevant and improper. The Eleventh Circuit also rejected several policy arguments made by the United States as to why United States Government employees should be precluded from bringing *qui tam* actions based on information acquired during the course of their employment, including concerns about the "parasitical" use of information, the risk of premature disclosure or a race to the courthouse between federal government and the employee, and the unfairness of employees receiving extra compensation through the False Claims Act when it is the duty of the employee to report fraud as a part of their employment. *Id.* at 1503–1504. These policy arguments carry even less weight when applied to an employee of a state government who is seeking to redress fraud on the federal government.

An employee can be acting on his own behalf in investigating matters in furtherance of a *qui tam* action even though he or she would also be conducting those same investigations on behalf of the employer. The court notes that § 3730(h) applies to employees who engage in lawful acts "on behalf of the employee *or others.*" (Emphasis supplied). Additionally, many or most *qui tam* actions are the product of information which the plaintiff has gained during the course of his

or her employment. Section 3730(h) was enacted to protect employees who uncover and report instances of fraud against the United States on the part of their employers. If defendants' reasoning is adopted, most employees will be denied the protection of § 3730(h).

Defendants also cite this court's decision in *Fauss v. Ohio Department of Natural Resources,* Slip Op. C2–94–336 (S.D.Ohio 1994). *Fauss* involved a civil rights action under 42 U.S.C. § 1983 asserting alleged violations of a state employee's First Amendment right of free speech. *Fauss* was governed by *Thomson v. Scheid,* 977 F.2d 1017 (6th Cir.1992) and *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), which required an analysis of the employee's motive for making the speech, that is, whether the employee intended to speak out on matters of public concern or to communicate matters to his superiors relevant to his employment, in determining whether there was an infringement of the employee's First Amendment rights. This First Amendment analysis is simply inapplicable to an action under the False Claims Act.

Plaintiff will have to prove as an element of his § 3730(h) claim that he was engaging in protected activities in furtherance of an action under the False Claims Act, and the fact that supervision of the community action agencies was a part of plaintiff's job responsibilities might give rise to an issue of fact as to whether defendants knew that plaintiff was engaging in protected activity under the Act. *See Robertson v. Bell Helicopter Textron, Inc.,* 32 F.3d 948 (5th Cir.1994). However, the determination of these matters must be determined at trial or in summary judgment proceedings. The court rejects defendants' interpretation of § 3730(h) and concludes that an employee may act in his or her own behalf by investigating fraudulent claims made against the United States in furtherance of a False Claims Act action even though the protected activities are also within the scope of the employee's job duties.

■ An issue which defendants have not raised in their motion to dismiss is whether plaintiff's claim under § 3730(h) is barred by the Eleventh Amendment insofar

as he seeks monetary damages. The applicability of the Eleventh Amendment is a jurisdictional issue which may be considered by the court *sua sponte. Porter v. Illinois,* 36 F.3d 684 (7th Cir.1994). The Eleventh Amendment bars suits by individuals against a state in federal court. Congress may create federal jurisdiction for state liability. *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). However, in doing so, Congress must use unequivocal statutory language to abrogate eleventh amendment immunity. *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985). A state may also waive its eleventh amendment immunity. However, the fact that a state appears in an action in federal court and offers defenses is not sufficient in itself to create a waiver. *Estate of Ritter v. University of Michigan,* 851 F.2d 846 (6th Cir.1988).

It is well established that the Eleventh Amendment is not a bar to suits by the United States against a state, nor is it a bar to a *qui tam* action against a state under 31 U.S.C. § 3730(b)(1) since the plaintiff in such an action is permitted to initiate the suit on behalf of the United States and the United States is the real party in interest. *United States ex rel. Milam v. University of Texas M.D. Anderson Cancer Center,* 961 F.2d 46 (4th Cir.1992). However, in *United States ex rel. Moore v. University of Michigan,* 860 F.Supp. 400 (E.D.Mich.1994), the court noted that an action under § 3730(h) is brought solely on behalf of and for the benefit of the employee. The court concluded that the False Claims Act contained no express language indicating an intent on the part of Congress to abrogate eleventh amendment immunity in cases under § 3730(h). *Id.* at 404–405. *Cf. Daly v. Department of Energy,* 741 F.Supp. 202 (D.Colo.1990) (holding that § 3730(h) does not express congressional intent to waive sovereign immunity on behalf of the United States).

 This court agrees with the reasoning in *Moore* and concludes that there is no express abrogation of eleventh amendment immunity by Congress in § 3730(h). The court finds no provision under Ohio law which would indicate that Ohio has waived its immunity in actions under § 3730(h). Therefore, plaintiff's action insofar as he seeks compensatory relief under § 3730(h) is barred by the Eleventh Amendment. However, the Eleventh Amendment does not bar plaintiff's § 3730(h) claim against the individual state defendants in their official capacities insofar as he is seeking prospective injunctive relief. *Thiokol Corp. v. Department of Treasury,* 987 F.2d 376 (6th Cir.1993).

The court further notes that plaintiff has failed to allege in his complaint which of the defendant officials played a part in any acts of harassment or his termination. He has made no allegations against these defendants individually. In accordance with the court's determination on the eleventh amendment issue, only defendant Jakeway in his official capacity as director of ODOD will remain a defendant with respect to plaintiff's § 3730(h) claim.

In accordance with the foregoing, the motion to dismiss of defendant Buller is granted and she is hereby dismissed as a party. The motion to dismiss of defendants State of Ohio, ODOD, Jakeway, Lombardi and Garber is denied in regard to plaintiff's first and second claims for relief, and granted in regard to plaintiff's third and fourth claims for relief. Defendants' motion to dismiss the § 3730(h) claim is granted in part and denied in part. Plaintiff's claim under § 3730(h) is dismissed as to all defendants, except that plaintiff may proceed against defendant Jakeway in his official capacity in regard to claims for prospective injunctive relief under § 3730(h).

The court will permit plaintiff to amend his complaint to address the deficiencies discussed above. Plaintiff may file an amended complaint within thirty days of the date of this order.

Defendants have moved for a protective order staying discovery pending this court's ruling on their motion to dismiss. Since the court has now ruled on the motion to dismiss, the motion for a protective order is moot and it is therefore denied.

It is so ORDERED.