91 F.3d 1211
 65 USLW 2097, 11 IER Cases 1713, 96
Cal. Daily Op. Serv. 5510,
96 Daily Journal D.A.R. 9024
 UNITED STATES, ex rel., Michael A. (Brian) HYATT, Plaintiff-Appellant,
v.
NORTHROP CORPORATION, a Delaware corporation; Kulite
Semiconductor Products, Inc., a business organization, form
Unknown; Kulite, a business organization, form Unknown;
Solid State Devices, Inc., a California corporation;
Cal-Doran Metallurgical Services, Inc., a California
corporation, d/b/a Cal-Doran Heat Treating Company of Los
Angeles, d/b/a Southern California Aluminum Heat Treating
Company; Cal-Doran Heat Treating Company, a business
organization, form Unknown; Southern California Aluminum
Heat Treating Company, a business organization, form
Unknown, Defendants-Appellees.
 No. 95-55175.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 3, 1996.
Decided July 26, 1996.
 
 Phillip E. Benson, Law Offices of Phillip E. Benson, Newport Beach, California, and Linda R. Maclean, Claremont, California, for plaintiff-appellant.
 Marc A. Becker, Munger, Tolles & Olson, Los Angeles, California; Richard C. Goodman, Stradling, Yocca, Carlson & Rauth, Newport Beach, California; Peter B. Jones, Jones & Donovan, Irvine, California; Aurora Cassirer, Parker, Chapin, Flattau & Klimple, New York City, for defendants-appellees.
 Appeal from the United States District Court for the Central District of California, David V. Kenyon, District Judge, Presiding. D.C. No. CV-93-02529-KN.
 Before: FARRIS, FERNANDEZ and THOMAS, Circuit Judges.
 THOMAS, Circuit Judge:
 
 
 1
 This appeal presents the question of whether the equitable tolling provision of the False Claims Act statute of limitations applies to a qui tam plaintiff as well as to the government. We conclude that it does, but that for the qui tam plaintiff the limitations period runs from the date the plaintiff knew or reasonably should have known of the facts material to the right of action. Thus, we affirm the district court's dismissal, albeit on different grounds.
 
 Background
 
 2
 Qui tam plaintiff Michael A. Hyatt ("Hyatt") worked as an engineer at Northrop Corporation ("Northrop") from August of 1981 to May 13, 1986. In late 1982, Hyatt reported to his superiors his concerns that the Inertial Measurement Unit used in the Peacekeeper ("MX") missile program was defective in its design, development and manufacture. He alleges that soon thereafter he began to suffer harassment in retaliation for his report. Northrop terminated Hyatt on May 13, 1986.
 
 
 3
 Hyatt filed his first complaint against Northrop on October 3, 1986 (" Hyatt I ") asserting, among other claims, a qui tam action under the False Claims Act, 31 U.S.C. §§ 3729 et seq. ("FCA" or "Act"). Included in the complaint was an allegation that Northrop used defective components in a variety of projects, including the MX missile and the B-1B bomber. The district court dismissed the qui tam action on March 31, 1988 for lack of jurisdiction.[1]
 
 
 4
 Hyatt filed his second complaint against Northrop on October 15, 1987 (" Hyatt II "). This complaint also asserted a qui tam action for FCA violations in connection with the MX missile program. The district court dismissed most of Hyatt's allegations. The remaining claims settled.
 
 
 5
 Hyatt filed this, his third complaint against Northrop, on April 30, 1993 (" Hyatt III "). The complaint again asserted a qui tam action for FCA violations concerning the MX missile and B-1B bomber programs. Northrop moved to dismiss the complaint on numerous grounds, including res judicata, statute of limitations, and 31 U.S.C. § 3730(b)(5), which bars qui tam actions which are based on facts underlying a previously filed qui tam action. Hyatt thereafter filed a first amended complaint on July 11, 1994, which added Kulite Semiconductor Products, Cal-Doran Metallurgical Services ("Cal-Doran") and Solid State Devices as defendants. The amended complaint contained allegations concerning the Blue Laser, MX missile, and B-1B bomber programs. Hyatt later voluntarily dismissed his MX missile and Blue Laser claims against Northrop. Remaining are claims against Kulite Semiconductor Products and Solid State Devices in connection with the MX missile program and against Northrop and Cal-Doran concerning the B-1B bomber program.
 
 
 6
 The Hyatt III Defendants moved to dismiss the first amended complaint on several grounds, including expiration of the statute of limitations. The district court granted the motion based on the statute of limitations only, holding that while the tolling provision in 31 U.S.C. § 3731(b)(2), added to the FCA in 1986, applies retrospectively to this action, that provision by its terms applies only to suits brought by the government and not to qui tam suits. Hyatt v. Northrop Corp., 883 F.Supp. 484 (C.D.Cal.1995). Hyatt timely appealed from this decision.
 
 Discussion
 
 7
 The district court's interpretation of a statute is a question of law reviewed de novo. Viceroy Gold Corp. v. Aubry, 75 F.3d 482, 488 (9th Cir.1996). In statutory interpretation, the starting point is always the language of the statute itself. Queen of Angels/Hollywood Presbyterian Medical Ctr. v. Shalala, 65 F.3d 1472, 1477 (9th Cir.1995).
 
 
 8
 The statute at issue, 31 U.S.C. § 3731(b), provides:
 
 
 9
 (b) A civil action under section 3730 may not be brought--
 
 
 10
 (1) more than 6 years after the date on which the violation of Section 3729 is committed, or
 
 
 11
 (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed,
 
 
 12
 whichever occurs last.
 
 
 13
 The Act creates two types of civil actions. The first, under § 3730(a), is brought by the Attorney General on behalf of the United States. The other, under § 3730(b), is a qui tam action brought by private plaintiffs, called relators, also on behalf of the United States.
 
 
 14
 The Hyatt III Defendants argue that the plain meaning of the statute shows that the tolling provision of § 3731(b)(2) was not intended to apply to qui tam plaintiffs.[2] On the contrary, the clear and unambiguous statutory language leads to the opposite conclusion. Section 3731(b) delineates the statute of limitations for a "civil action under section 3730." No distinction is made between civil actions brought by the government under § 3730(a) and those brought by qui tam plaintiffs under § 3730(b). Indeed, there is nothing in the entire statute of limitations subsection which differentiates between private and government plaintiffs at all. If Congress had intended the tolling provisions of § 3731(b)(2) to apply solely to suits brought by the Attorney General, it could have easily expressed its specific intent.
 
 
 15
 The Hyatt III Defendants further contend the legislative history demonstrates that the tolling provision was meant to apply only to the government. They point to the House and Senate Judiciary Committee reports which refer to the "government" in explaining the addition of a tolling provision. H.R.Rep. No. 660, 99th Cong., 2d Sess. 25 (1986);[3] S.Rep. No. 345, 99th Cong., 2d Sess. 15 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5280.[4]
 
 
 16
 However, the legislative history of the Act is replete with many instances in which the word "government" is used when referring to suits brought in the name of the United States by either the Attorney General or private qui tam plaintiffs. For example, in discussing the scienter requirement, the committee reports refer to evidence which the "government" must offer. S.Rep. No. 345, 99th Cong., 2d Sess. 6-7 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5271-72.[5] Similarly, when discussing the standard of proof which either civil plaintiff must attain, the committee reports discuss the level of proof the "United States" must meet.[6] This ambiguous use of the word "government" in the legislative history is actually consistent with the theory of the Act because qui tam plaintiffs are merely agents suing on behalf of the government, which is always the real party in interest. United States ex rel. Killingsworth v. Northrop Corp., 25 F.3d 715, 720 (9th Cir.1994); United States ex rel. Kelly v. Boeing Co., 9 F.3d 743, 748 (9th Cir.1993), cert. denied, 510 U.S. 1140, 114 S.Ct. 1125, 127 L.Ed.2d 433 (1994); United States ex rel. Milam v. University of Texas M.D. Anderson Cancer Ctr., 961 F.2d 46, 48-50 (4th Cir.1992).
 
 
 17
 Given this history, the fact that the reports refer to "the Government" in discussing tolling without specifically mentioning qui tam plaintiffs is a weak rationale to support a decision contrary to the plain meaning of the statute. See Church of Scientology v. United States Dep't of Justice, 612 F.2d 417, 425 (9th Cir.1979) ("[W]e are hesitant to rely solely upon 'grammatical nuances' in the legislative materials"). Where the language of a statute is clear and fails to compel an absurd result, courts are discouraged from examining legislative history. United States v. Ford, 989 F.2d 347, 350 (9th Cir.1993). The legislative history is at best ambiguous. The plain meaning of the statutory language controls. See Cramer v. Commissioner, 64 F.3d 1406, 1413 (9th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 2499, 135 L.Ed.2d 190 (1996); Church of Scientology, 612 F.2d at 422.
 
 
 18
 Further, Congress made many distinctions between the rights of the government and rights of the qui tam plaintiff in § 3730. See, e.g., 31 U.S.C. § 3730(b)(4)(A) (permitting the government to take over filed qui tam action); § 3730(c)(1) (granting the government primary responsibility for conducting suit); § 3730(c)(2)(A) (permitting the government to dismiss an action without the relator's consent); § 3730(c)(2)(B) (permitting the government to settle without the relator's consent). If Congress wanted to restrict the operation of the tolling provision to suits brought by the government, it could easily have done so. It did not. " '[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.' " Tang v. Reno, 77 F.3d 1194, 1197 (9th Cir.1996) (quoting I.N.S. v. Cardoza-Fonseca, 480 U.S. 421, 432, 107 S.Ct. 1207, 1213, 94 L.Ed.2d 434 (1987)).
 
 
 19
 Northrop argues that the language of 31 U.S.C. § 3731(b)(2) is the same as that in 28 U.S.C. § 2416, which concerns the "[t]ime for commencing actions brought by the United States."[7] Because the language is the same, and 28 U.S.C. § 2416 unambiguously applies only to suits brought by the government, Northrop contends 31 U.S.C. § 3731(b)(2) must also apply only to suits brought by the government. We find this argument unconvincing. The language common to both sections is a rule of discovery frequently used in tolling provisions for fraud causes of action. What actuates the tolling provision in both 28 U.S.C. § 2416(c) and 31 U.S.C. § 3731(b)(2) is the same, but this similarly is irrelevant to the inquiry of whether the tolling provision in § 3731(b)(2) applies to qui tam plaintiffs as well as to the government. That Congress used the same language in both provisions proves nothing, except perhaps that when Congress did not clearly provide that the tolling provision of 31 U.S.C. § 3731(b)(2) applies only to the government, as it did for 28 U.S.C. § 2416(c), it meant for § 3731(b)(2) to apply to qui tam plaintiffs as well as to the government.
 
 
 20
 For all these reasons, we conclude that Congress did not intend to restrict the tolling provisions of the Act to apply to suits brought by the Attorney General alone, but intended the tolling provision to apply to qui tam plaintiffs as well.
 
 
 21
 Having decided this, the question remains as to what event initiates the running of the statute of limitations against a qui tam plaintiff under 31 U.S.C. § 3731(b)(2). Prior to the 1986 amendments, an action under the FCA had to be brought within six years of the alleged violation. 31 U.S.C. § 3731(b) (1982). Although the pre-1986 statute did not contain a tolling provision, several courts applied equitable tolling principles to FCA suits to hold that the limitations period begins to run from the time the government discovers or should have discovered the fraud, rather from the date of the violation itself. See, e.g., United States v. Uzzell, 648 F.Supp. 1362, 1367 (D.D.C.1986); United States v. CFW Constr. Co., 649 F.Supp. 616, 619 (D.S.C.1986). Equitable tolling, as the name suggests, is an equitable doctrine grounded in the venerable notion that it would be unfair to bar a fraud action as untimely where the defendant successfully concealed the fraud from the plaintiff during the limitations period. See Bailey v. Glover, 88 U.S. (21 Wall.) 342, 348-50, 22 L.Ed. 636 (1874). Fraud by its very nature is concealed and difficult to discover. The most successful fraud may be the one least likely discovered within the limitations period. Courts have barred such inequitable reliance on statutes of limitations, applying the maxim "no man may take advantage of his own wrong." Glus v. Brooklyn E. Dist. Terminal, 359 U.S. 231, 232, 79 S.Ct. 760, 762, 3 L.Ed.2d 770 (1959). Under equitable tolling, courts toll the running of the statute of limitations until the plaintiff knew or reasonably should have known of the facts underlying his cause of action. In re United Ins. Management, 14 F.3d 1380, 1384 (9th Cir.1994) (quoting Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 363, 111 S.Ct. 2773, 2782, 115 L.Ed.2d 321 (1991)). As a general rule, equitable tolling is read into every federal statute of limitations. United Ins. Management, 14 F.3d at 1384-85 (quoting Holmberg v. Armbrecht, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946)).
 
 
 22
 The 1986 FCA amendments codified this equitable tolling principle in 31 U.S.C. § 3731(b)(2), which tolls the statute of limitations until the facts underlying the fraud are or should have been discovered by "the official of the United States charged with responsibility to act in the circumstances," up to a maximum of ten years. See S.Rep. No. 345, 99th Cong., 2d Sess. 15 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5280 ("[B]ecause fraud is, by nature, deceptive, such tolling of the statute of limitations is necessary to ensure the Government's rights are not lost through a wrongdoer's successful deception."); H.R.Rep. No. 660, 99th Cong., 2d Sess. 25 (1986) ("[F]raud is often difficult to detect and ... the statute of limitations should not preclude the Government from bringing a cause of action under this Act if they were not aware of the fraud.")However, the rationale behind tolling requires that the statute of limitations start to run when the plaintiff acquires knowledge of the wrongful activity. Statutes of limitation are used to determine "whether the plaintiff has inexcusably slept on his rights." Holmberg, 327 U.S. at 396, 66 S.Ct. at 584. Limitation periods protect defendants against stale claims:
 
 Statutory limitation periods are:
 
 23
 'designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.'
 
 
 24
 American Pipe & Constr. Co. v. Utah, 414 U.S. 538, 554, 94 S.Ct. 756, 766, 38 L.Ed.2d 713 (1974) (quoting Order of Railroad Telegraphers v. Railway Express Agency, 321 U.S. 342, 348-49, 64 S.Ct. 582, 586, 88 L.Ed. 788 (1944)).
 
 
 25
 Thus, tolling statutes generally only extend the statute of limitations during the period in which the plaintiff did not know of the defendant's wrongful conduct. The Act codifies this concept by extending the statute of limitations three years "after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances." 31 U.S.C. § 3731(b)(2).
 
 
 26
 When the Attorney General files an action under the Act, courts have differed on which government officer is "charged with responsibility to act" on the claim. Compare United States v. Macomb Contracting, 763 F.Supp. 272, 274 (M.D.Tenn.1990) (holding that the Assistant Attorney General in charge of the Civil Division of the Department of Justice is the only Government official whose knowledge would activate the three year statute) with United States ex rel. Kreindler & Kreindler v. United Technologies Corp., 777 F.Supp. 195, 204-05 (N.D.N.Y.1991), (holding that knowledge of senior army officials in charge of the Black Hawk helicopter project is sufficient to start the three year statute of limitations running), aff'd on other grounds, 985 F.2d 1148 (2d Cir.), cert. denied, 508 U.S. 973, 113 S.Ct. 2962, 125 L.Ed.2d 663 (1993).
 
 
 27
 With a qui tam plaintiff, the question is far less difficult. The qui tam plaintiff is the only person "charged with responsibility to act in the circumstances."[8] Although he acts in the name of the United States, his suit must be founded on private facts known to him. 31 U.S.C. § 3730(e)(4). Indeed, Congress has denied any court jurisdiction over a qui tam action based on publicly disclosed information unless filed by someone who is the "original source of the information" which forms the basis of the complaint. United States ex. rel. Fine v. Chevron, U.S.A., 72 F.3d 740, 743 (9th Cir.1995) (en banc), cert. denied, --- U.S. ----, 116 S.Ct. 1877, 135 L.Ed.2d 173 (1996). Once the qui tam plaintiff has the requisite information, he cannot sleep on his rights. He is "charged with responsibility to act under the circumstances." Thus, as to the qui tam plaintiff, the three-year extension of the statute of limitations begins to run once qui tam plaintiff knows or reasonably should have known the facts material to his right of action Hyatt concedes that the general FCA six-year statute of limitations would bar his complaint, but argues that the tolling provision sustains his case. Under Hyatt's theory, the FCA statute of limitations began running when officials within the United States government learned of the alleged fraud through service of his complaint. Thus, he contends he has an additional three years to file his suit, subject to the ten-year statute of repose. Hyatt's interpretation of the tolling provision would permit qui tam relators to control the length of their own limitations period by withholding their allegations until they are prepared to sue. Under this theory, qui tam relators could wait a full ten years after learning of the deceit before suing. This would frustrate the purposes of a limitation period and the purposes of the Act. Granting qui tam relators the power to wait nearly ten years to sue would allow fraud to continue and losses to mount. Furthermore, allowing a qui tam plaintiff to wait ten years might interfere with law enforcement: false claims are subject to criminal prosecution only within five years after the wrongful act is committed. 18 U.S.C. §§ 287, 3282 (1986). If relators wait over five years to report the fraud, the government will lose the right to seek a criminal penalty.
 
 
 28
 Hyatt cannot have it both ways. If he accepts the benefits of the tolling statute, he must be subject to its restrictions. His duty to act must be triggered by his own knowledge, not the knowledge of others. This interpretation comports with the legislative scheme of the Act, the purposes of statutes of limitations and the FCA tolling provisions. Hyatt filed his original complaint in this action on April 30, 1993. He became aware of the alleged fraud sometime before Northrop fired him on May 13, 1986. The six-year general limitation period has expired and his suit was filed more than three years after he knew of the alleged wrong. Hyatt's claims are therefore untimely.
 
 
 29
 To summarize: a civil action under the Act brought by a qui tam plaintiff must be commenced no more than (1) six years after the date on which the FCA violation is committed or (2) three years after the date when facts material to the right of action are known or reasonably should have been known by the qui tam plaintiff, whichever occurs last. A suit under the Act must, in any event, be brought no more than ten years after the date on which the violation occurred.
 
 
 30
 Given this holding, it is unnecessary to reach the other issues raised by the Hyatt III Defendants. The order dismissing the amended complaint is AFFIRMED.
 
 
 
 [1]
 The Hyatt I district court declined to apply the 1986 FCA amendments retrospectively and dismissed the action under the "prior government knowledge" defense. Under this defense, if the government had prior knowledge of the facts underlying a qui tam action, the court lacked jurisdiction over the action. See 31 U.S.C. § 3730(b)(4) (1982). The 1986 amendments eliminate this defense, permitting a qui tam action based on publicly disclosed facts if the plaintiff was the original source of the information. See 31 U.S.C. § 3730(e)(4) (1986). The Ninth Circuit reversed the district court's ruling that § 3730(e)(4) does not apply retrospectively in Hyatt v. Northrop Corp., 80 F.3d 1425, 1428-30 (9th Cir.1996)
 
 
 [2]
 Cal-Doran argues the district court erred in holding that amended § 3731(b) applies retrospectively. Statutes of limitations should generally be applied retrospectively as long as the application would not revive a stale claim, which it would not here. Chenault v. United States Postal Serv., 37 F.3d 535, 539 (9th Cir.1994). Furthermore, the Supreme Court in Landgraf v. USI Film Prods., 511 U.S. 244, ----, 114 S.Ct. 1483, 1505, 128 L.Ed.2d 229 (1994), held that if a provision of a new statute would operate retroactively, that provision should not be applied retrospectively absent clear congressional intent to the contrary. A provision has retroactive effect if it impairs a party's rights, increases a party's liability for past conduct, or imposes new duties. Id. Amended § 3731(b) does not operate retroactively. The amendment relates to whether a qui tam plaintiff can bring an action, not to whether the Hyatt III Defendants are liable for the underlying fraud. See Hyatt I, 80 F.3d at 1428-29 (applying amended 31 U.S.C. § 3730(e)(4)(A) retrospectively). The district court did not err in ruling that amended § 3731(b) applies retrospectively
 
 
 [3]
 The House report relied upon provides: "It was brought to the attention of the Committee that fraud is often difficult to detect and that the statute of limitations should not preclude the Government from bringing a cause of action under this Act if they were not aware of the fraud. The Committee agreed that this was unfair and so expanded the statute of limitations. However, the Committee did not intend to allow the Government to bring fraud actions ad infintum [sic], and therefore imposed the strict 10 year limit on False Claims Act cases." H.R.Rep. No. 99-660, 99th Cong., 2d Sess. 25 (1986)
 
 
 [4]
 The Senate report provides: "[T]he subcommittee added a modification of the statute of limitations to permit the Government to bring an action within 6 years of when the false claim is submitted (current standard) or within 3 years of when the Government learned of a violation, whichever is later. The subcommittee agreed that because fraud is, by nature, deceptive, such tolling of the statute of limitations is necessary to ensure the Government's rights are not lost through a wrongdoer's successful deception." S.Rep. No. 345, 99th Cong., 2d Sess. 15 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5280
 
 
 [5]
 "[T]he civil False Claims Act currently provides that the Government need only prove that the defendant knowingly submitted a false claim. However, this standard has been construed by some courts to require that the Government prove the defendant had actual knowledge of fraud...." S.Rep. No. 345, 99th Cong., 2d Sess. 6-7 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5271-72 (emphasis supplied). The report cites as an example of its point United States v. Aerodex, Inc., 469 F.2d 1003 (5th Cir.1972), which makes no distinction between government and qui tam plaintiffs. See id. at 1007. What must be proved to make out a violation of the FCA is the same for private plaintiffs as it is for the government. It seems clear that the Senate referred to "the Government" in this instance as a shorthand for saying "the plaintiff."
 
 
 [6]
 The Senate report states: "Some courts have required that the United States prove a violation by clear and convincing ... evidence." S.Rep. No. 345, 99th Cong., 2d Sess. 7 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5272. The report cites United States v. Ueber, 299 F.2d 310 (6th Cir.1962), which again makes no distinction between private and government plaintiffs. See id. at 314
 
 
 [7]
 28 U.S.C. § 2416 is part of chapter 161 of Title 28. Chapter 161 is entitled "United States as a Party Generally" and deals with various concerns involved when the United States government is a party to a lawsuit. See 28 U.S.C. §§ 2401-2416 (1994). Section 2416(c) provides that the § 2415 statute of limitations is tolled while the "facts material to the right of action are not known and reasonably could not be known by an official of the United States charged with the responsibility to act in the circumstances...."
 
 
 [8]
 Although it may seem incongruous to hold that a qui tam plaintiff could be considered "an official of the United States charged with responsibility to act," it is not--particularly in view of the FCA statutory scheme. In interpreting a statute, a court should not look to isolated sentences but rather to the whole law, and to its object and policy. F.D.I.C. v. McSweeney, 976 F.2d 532, 537 (9th Cir.1992), cert. denied, 508 U.S. 950, 113 S.Ct. 2440, 124 L.Ed.2d 658 (1993). Qui tam relators cannot and do not sue for FCA violations on their own behalf. Rather, they sue on behalf of the government as agents of the government, which is always the real party in interest. Killingsworth, 25 F.3d at 720; Kelly, 9 F.3d at 748; Milam, 961 F.2d at 48-50. The FCA deputizes private individuals to act to protect the interests of the United States. Id. at 49. In this sense, qui tam relators are "charged with responsibility to act" to enforce the FCA. Indeed the shorthand "qui tam " is derived from the Latin phrase "qui tam pro domino rege quam pro se imposo sequitur " meaning "who brings the action as well for the king as for himself." Kelly, 9 F.3d at 746 n. 3