**UNITED STATES of America ex rel. Carmen DIMARTINO, Plaintiff,**

v.

**INTELLIGENT DECISIONS, INC. Defendant.**

**No. 8:00–CV–1778–I–30TBM.**

United States District Court, M.D. Florida. Tampa Division.

March 10, 2004.

Michael F. Hertz, Patricia Davis, Dennis L. Phillips, Latour Lafferty, for U.S., Antigone Potamianos (of counsel).

### ORDER

MOODY, District Judge.

THIS CAUSE comes before the Court upon the following:

1. Relator's Motion and Incorporated Memorandum of Law to Clarify Government's Entitlement to Proceeds Under 31 U.S.C. § 3730(b)(1) and 31 U.S.C. § 3730(d)(2) (Dkt.# 71);

2. United States of America's Opposition to Relator's Motion and Incorporated Memorandum of Law to Clarify Government's Entitlement to Proceeds Under 31 U.S.C. § 3730(b)(1) and 31 U.S.C. § 3730(d)(2) (Dkt.# 72);

3. United States of America's Rule 60(b) Motion for Relief from Relator's Voluntary Dismissal and for an Allocation of Settlement Proceeds Paid by Intelligent Decisions Inc. to Relator (Dkt.# 73);

4. Memorandum in Support of the United States of America's Rule 60(b) Motion for Relief from Relator's Voluntary Dismissal and for an Allocation of Settlement Proceeds Paid by Intelligent Decisions Inc. to Relator (Dkt.# 74); and

5. Plaintiff/Relator's Response to United States of America's Rule 60(b) Motion for Relief from Relator's Voluntary Dismissal and for an Allocation of Settlement Proceeds Paid by Intelligent Decisions Inc. to Relator (Dkt.# 75).

### BACKGROUND

On August 25, 2000, relator Carmen Dimartino filed a *qui tam* complaint under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, against Tech Data Corporation and Intelligent Decisions, Inc. ("Intelligent Decisions").[1] On October 11, 2002, after several extensions of the deadline for the government's decision to intervene in the matter, the United States filed a Notice of Election to Decline Intervention (Dkt.# 27). On November 7, 2002, the Court ordered the seal lifted on the Complaint and directed the Relator to serve the Complaint upon the Defendants (Dkt.# 29).

Defendant Intelligent Decisions was served with the Complaint on November 25, 2002. Eleven days later, on December 6, 2002, Relator, Relator's counsel, James Hoyer Newcomer & Smiljanich, P.A., and Intelligent Decisions executed an Interim

---

1. This Court granted Defendant Tech Data Corporation's motion to dismiss the Amended Complaint on July 3, 2003.

Memorandum of Understanding. On December 13, 2002, Relator, Relator's counsel, and Intelligent Decisions, executed a Confidential Final Memorandum of Understanding ("MOU") which called for Intelligent Decisions to pay $500,000.00 in three installments for the release of Relator's claims. Under the MOU, of which the government had no knowledge, the government received nothing from Intelligent Decisions.

Relator filed a notice of voluntary dismissal on December 13, 2002 (Dkt.# 31).[2] The notice of voluntary dismissal neither mentioned the MOU nor was this Court ever advised of the agreements between Relator, Relator's counsel and Intelligent Decisions. The Notice of Voluntary Dismissal only stated that "Relator does not wish to proceed with the case against this Defendant."

Under 31 U.S.C. § 3730(b), an "action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting."[3] This Court entered an Order dismissing Intelligent Decisions, without prior approval from the Attorney General, on December 19, 2002 (Dkt.# 33).

In March of 2003, the government first learned that Relator had entered into an agreement with Intelligent Decisions and that Relator had received payment from Intelligent Decisions. The government, in a letter dated March 31, 2003, asked Relator to confirm or deny the existence of "a settlement agreement entered into between relator and the Intelligent Decisions, Inc." Relator's counsel artfully replied that "there has been no compromise of the claims of the Government against Intelligent Decisions" and that "[t]o relator's knowledge, there has been no settlement of the claims of the Government against Intelligent Decisions nor Tech Data related to this cause." The government finally received copies of the memorandums of understanding in response to the General Service Administration's Inspector General's subpoenas to Relator, Relator's counsel and Intelligent Decisions.

Upon receipt of the subpoena, Intelligent Decisions halted the third installment payment to Relator and Relator's counsel.[4] Intelligent Decisions also advised Relator and Relator's counsel that Intelligent Decisions considered the "agreement null and void due to your fraud."[5]

Relator and Relator's counsel have refused the government's demands to remit to the United States seventy-five percent (75%) of the proceeds they received from Intelligent Decisions. The government now moves this Court to set aside the dismissal and order Relator and Relator's counsel to transfer seventy-five percent

---

2. That same day, Relator and Relator's counsel modified their retainer agreement so that the settlement proceeds received from Intelligent Decisions would be evenly distributed between Relator and his counsel, with no costs deducted from the settlement amount.

3. 31 U.S.C. § 3730(b) states:

(b) Actions by private person.—(1) A person may bring a civil action for a violation of section 3729 for the person and for the United States Government. The action shall be brought in the name of the Government. The action may be dismissed only if the court and the Attorney General give

written consent to the dismissal and their reasons for consenting.

4. Paragraph five (5) of the MOU provides that the $200,000.00 installment payment due January 2, 2004, shall not be payable in the event the government intervenes in this action.

5. This Court is deeply troubled by Intelligent Decisions' allegations that James Hoyer Newcomer & Smiljanich, P.A. fraudulently obtained the settlement agreement, "threatened [Intelligent Decisions] with public exposure if they did not pay the monies," and made "gross misrepresentations of law, procedure and facts to procure a settlement."

(75%) of the proceeds received from Intelligent Decisions to the United States.

Relator objects to the government's motion and asks the Court to enter an order confirming the validity of the agreement between Relator and Intelligent Decisions. Relator also seeks a ruling from the Court that the United States is not entitled to any of the proceeds received by Relator and his counsel from Intelligent Decisions. Relator asserts that the MOU entered into between Relator and Intelligent Decisions does not constitute a settlement agreement. Relator argues that the MOU only releases the Relator and Relator's counsel's claims and that it did not compromise the government's claim against Intelligent Decisions. Relator also argues that the government has no right to nullify a settlement agreement by objecting to the dismissal of the case once it has decided not to intervene.

### DISCUSSION

■ Relator argues that the government lacks the right to nullify the settlement agreement by refusing to consent to the dismissal of the case. Relator argues that once the government decides not to intervene, it has consented to the dismissal of the action. Relator cites *United States, ex rel. Stinson, Lyons, Gerlin and Bustamante, P.A. v. Provident Life and Accident Ins. Co.*, 811 F.Supp. 346 (E.D.Tenn. 1992) and *United States ex rel. Fender v. Tenet Healthcare Corp.*, 105 F.Supp.2d 1228 (N.D.Ala.2000), to support his position.

This Court disagrees with Relator's position and rejects the holdings in *Fender* and *Stinson*.[6] The plain language of § 3730(b) requires the Attorney General's consent before a relator may voluntarily dismiss an action. Not only do the holdings in *Fender* and *Stinson* ignore the plain language of § 3730(b), and the fact that the government is the real party in interest, adopting Relator's position would leave this Court impotent to deal with relators who "manipulate settlements in ways that unfairly enrich them and reduce benefits to the government." *Searcy v. Philips Elecs. N. Am. Corp.*, 117 F.3d 154, 160 (5th Cir.1997); *see also United States v. Health Possibilities, P.S.C.*, 207 F.3d 335, 341–43 (6th Cir.2000).[7] As the court in *Searcy* noted:

> For more than 130 years, Congress has instructed courts to let the government stand on the sidelines and veto a voluntary settlement. It would take a serious conflict within the False Claims Act or a profound gap in reasonableness of the provision for us to be able to justify ignoring this language. We can find neither. 117 F.3d at 160.

Relator also asserts that the MOU does not constitute a settlement agreement and that it releases only the Relator and Relator's counsel's claims against Intelligent Decisions. Whether the MOU is or is not a settlement agreement is irrelevant to whether this Court can grant the voluntary dismissal of the Complaint against Intelligent Decisions without the Attorney General's approval. But even if the MOU was not a settlement agreement, this Court and the government were entitled to know of its existence prior to consenting to the dismissal of the action.

■ The Court questions what claims Intelligent Decisions settled in return for payment of $500,000.00 to Relator and Relator's counsel. The MOU specifically references this action and states that the

---

6. *Stinson* was arguably overruled by the Sixth Circuit's opinion in *United States v. Health Possibilities, P.S.C.*, 207 F.3d 335 (6th Cir. 2000).

7. This Court also questions Relator's claim that the $500,000.00 represents only costs and attorney's fees, especially in light of the modified retainer agreement.

"Relator agrees to release and forever discharge Intelligent Decisions from all claims, allegations and causes of action related to or connected with the [case of *United States of America ex rel Carmen Dimartino v. Tech Data Corporation and Intelligent Decisions, Inc.,* Case Number 8:00–CV–1778–T–30TBM]." The Complaint filed by the Relator in this action *only* contains a claim under the FCA.[8] The Complaint does not contain any personal claims of the Relator, such as a whistleblower or retaliation claim.

The Court will vacate the order of dismissal and reinstate the suit against Intelligent Decisions. The Court will reserve ruling on the government's motion to recover attorney's fees and costs incurred by the United States in investigating and litigating the foregoing issues.

It is therefore ORDERED AND ADJUDGED that:

1. Relator's Motion and Incorporated Memorandum of Law to Clarify Government's Entitlement to Proceeds Under 31 U.S.C. § 3730(b)(1) and 31 U.S.C. § 3730(d)(2) (Dkt.# 71) is DENIED.

2. United States of America's Rule 60(b) Motion for Relief from Relator's Voluntary Dismissal and for an Allocation of Settlement Proceeds Paid by Intelligent Decisions Inc. to Relator (Dkt.# 73) is GRANTED IN PART, DENIED IN PART and DEFERRED IN PART as set forth herein.

3. The Clerk is directed to reopen the case.

4. This Court's December 19, 2002 Order of dismissal as to Defendant Intelligent Decisions, Inc. (Dkt.# 33) is VACATED.

5. A status conference regarding proceeding with this action will be held on Tuesday, March 30, 2004, at 8:45 a.m. at the:

SAM M GIBBONS U.S. COURTHOUSE

801 N. Florida Avenue, Courtroom 13A

Tampa, Florida 33602

---

8. The United States is the real party in interest in a *qui tam* action under the FCA even if it is not controlling the litigation. *See United States ex rel. Rodgers v. Arkansas,* 154 F.3d 865, 868 (8th Cir.1998); *United States ex rel.* *Hyatt v. Northrop Corp.,* 91 F.3d 1211, 1217 n. 8 (9th Cir.1996); *United States ex rel. Milam v. University of Texas M.D. Anderson Cancer Center,* 961 F.2d 46, 48–49 (4th Cir.1992).