UNITED STATES of America, ex rel., Kathryn M. MILAM, Plaintiff–Appellee,

v.

The UNIVERSITY OF TEXAS M.D. ANDERSON CANCER CENTER, Defendant–Appellant,

and

Charles B. Wilson; Laurence J. Marton; Dennis F. Deen; Burt G. Feurstein, Philip J. Tofilon; the Regents of the University of California; Brain Tumor Research Center; University of California, Defendants.

United States of America, Amicus Curiae.

No. 91–2194.

United States Court of Appeals, Fourth Circuit.

Argued March 2, 1992.

Decided April 3, 1992.

David W. Williams, Asst. Atty. Gen., Austin, Tex., argued (Dan Morales, Atty. Gen. of Tex., Will Pryor, First Asst. Atty. Gen., Mary F. Keller, Deputy Atty. Gen., James C. Todd, Chief, Gen. Litigation Div., Austin, Tex., on brief), for defendant-appellant.

Robert Lowell Deitz, Perkins, Coie, Washington, D.C., argued (Mary Rose Hughes, Martin P. Willard, Jay I. Morstein, Frank, Bernstein, Conaway & Goldman, Baltimore, Md., on brief), for plaintiff-appellee.

Stuart M. Gerson, Asst. Atty. Gen., Douglas Letter, Civ. Div., U.S. Dept. of Justice, Washington, D.C.; Richard D. Bennett, U.S. Atty., Baltimore, Md., for amicus curiae.

Before HALL, Circuit Judge, KISER, U.S. District Judge for the Western District of Virginia, sitting by designation, and BLATT, Senior U.S. District Judge for the District of South Carolina, sitting by designation.

## OPINION

HALL, Circuit Judge:

The M.D. Anderson Cancer Center of the University of Texas appeals the district court's denial of its motion to dismiss, based on Eleventh Amendment immunity, a *qui tam* False Claims Act suit. We must decide whether the inapplicability of the Eleventh Amendment to suits brought by the United States extends to actions brought on the United States' behalf by *qui tam* relators. Concluding that it does, we affirm.

### I.

Relator Kathryn Milam is a post-doctoral cancer researcher. In the mid–1980s, she was employed at the University of California's Brain Tumor Research Center, a facility almost entirely supported by federal funds administered by the National Institute of Health (NIH).

Milam tried to replicate encouraging data supposedly generated in laboratory experiments conducted by another University of California researcher, Philip Tofilon, using NIH funds. She discovered that the results could not be replicated, and concluded that they were false.

Milam brought her findings to the attention of her superiors; she was instructed to keep quiet. She persisted in her efforts,

however, and was fired. She was later reinstated, and an internal investigation by the University of California resulted in complete vindication of her position that the reported results were false.

Tofilon had moved on to the appellant M.D. Anderson Cancer Center of the University of Texas (the Center), where he continued to use the false data in grant applications. Through Freedom of Information Act requests in 1989, Milam discovered that the California and Texas facilities had, between them, obtained over $3 million in grants from NIH that would not have been awarded save for the false data.

On February 14, 1990, Milam filed this False Claims Act action, as *qui tam* relator for the United States, against the University of California, various officials at that University, and Tofilon. The United States exercised its statutory privilege to allow the relator to prosecute the case without active intervention by the government. 31 U.S.C. § 3730(b)(4)(B). In an amended complaint filed March 4, 1991, the Center was added as a defendant.

The Center moved to dismiss, arguing that it was immune from suit under the Eleventh Amendment. The district court denied the motion, and the Center appeals.

■ We have jurisdiction, though the case is still pending below, because denials of motions to dismiss based on Eleventh Amendment immunity from suit are immediately appealable. *Foremost Guaranty Corp. v. Community Savings & Loan, Inc.,* 826 F.2d 1383 (4th Cir.1987).

## II.

### A.

■ At this juncture, relator Milam does not challenge the Center's assertion that it is an agency of the State of Texas and enjoys the state's Eleventh Amendment immunity. Moreover, the parties agree that the United States may sue states in federal courts notwithstanding the Eleventh Amendment. *United States v. Mississippi,* 380 U.S. 128, 85 S.Ct. 808, 13 L.Ed.2d 717 (1965); *West Virginia v. United States,* 479 U.S. 305, 107 S.Ct. 702, 93 L.Ed.2d 639 (1987). Joining the union waives a state's immunity from suit by the superior sovereign.

### B.

■ The issue then is simply stated: is this a suit by the United States? As one might expect, cases on such a relatively obscure point are rare. In the most similar case we find, a district court held that states are not entitled to Eleventh Amendment immunity against *qui tam* suits under the False Claims Act. *United States v. Rockwell International Corp.,* 730 F.Supp. 1031, 1035 (D.Colo.1990). The Second Circuit has stated that the United States is always the real party in interest in False Claims Act *qui tam* actions. *Minotti v. Lensink,* 895 F.2d 100, 104 (2nd Cir.1990); *accord, United States ex rel. LaValley v. First National Bank of Boston,* 625 F.Supp. 591 (D.N.H.1985); *see Public Interest Bounty Hunters v. Board of Governors,* 548 F.Supp. 157, 161 (N.D.Ga.1982) (*qui tam* plaintiff who filed frivolous suit, and not United States, is party-in-interest for purposes of awarding defendant attorney's fees). For several reasons, we believe that the United States is the real party in interest here.

■ First of all, the False Claims Act is concerned solely with false claims submitted to the government. The Act does provide for suits brought by individuals, but only as *qui tam* relators "in the name of the Government." 31 U.S.C. § 3730(b)(1). Hence, the plaintiff in this case is "United States of America ex rel. Kathryn Milam." Moreover, Fed.R.Civ.Pr. 17(a) commands that "[e]very action shall be prosecuted in the name of the real party in interest." Unless the statute and rule are in conflict, the United States must be the real plaintiff in this suit.

When a *qui tam* action is brought on its behalf, the government may choose to intervene and pursue the action itself or to permit the relator to pursue the action without its intervention. Whichever course it chooses, the government is entitled to the lion's share of any amount recovered.

Where the government prosecutes the action, the relator gets 15–25% of the recovery; if the government does not intervene, the relator gets 25–30%. 31 U.S.C. § 3730(d)(1)–(2).

Even where the government allows the *qui tam* relator to pursue the action, the case may not be settled or voluntarily dismissed without the government's consent.[1] Moreover, the government may change its mind and intervene at any point in the litigation "upon a showing of good cause." 31 U.S.C. § 3730(c)(3).

In summary, the structure of the *qui tam* procedure, the extensive benefit flowing to the government from any recovery, and the extensive power the government has to control the litigation weigh heavily against the Center's position.

### C.

■ The history and purpose of *qui tam* suits is likewise unsupportive of the Center. Statutes authorizing *qui tam* suits are older than the Republic. *Marvin v. Trout,* 199 U.S. 212, 225, 26 S.Ct. 31, 34, 50 L.Ed. 157 (1905) (discussing long history of practice). A *qui tam* relator is essentially a self-appointed private attorney general, and his recovery is analogous to a lawyer's contingent fee. The relator has no personal stake in the damages sought—all of which, by definition, were suffered by the government. *Id.* (relator "ha[s] no interest whatever in the controversy other than that given by statute"). The government, and not the relator, must have suffered the "injury in fact" required for Article III standing. *United States ex rel. Weinberger v. Equifax, Inc.,* 557 F.2d 456 (5th Cir.1977), *cert. denied,* 434 U.S. 1035, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978); *United States ex rel. Truong v. Northrop Corp.,* 728 F.Supp. 615, 616–620 (C.D.Cal.1989); *United States ex rel. Newsham v. Lockheed Missiles & Space Co.,* 722 F.Supp.

607, 614–615 (N.D.Cal.1989). We could not lightly conclude that the party upon whose standing the justiciability of the case depends is not the real party in interest.

Congress chose, as a means to encourage citizens to come forward with knowledge of frauds against the government, to give economic incentives to a *qui tam* plaintiff. In addition, it gave the Executive Branch the option to allocate its resources elsewhere and permit the relator to prosecute the action on its behalf. Through this procedure, Congress could reasonably have envisioned that more fraud would be discovered, more litigation could be maintained, and more funds would flow back into the Treasury.

On the other hand, perhaps Congress should have taken note of the possibility that states would be harassed by vexatious *qui tam* suits in federal courts. Perhaps it did, but decided that the benefits of the *qui tam* scheme outweighed its defects. In any event, we have no inclination or power to delve into the wisdom of the balance Congress struck.[2] *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 546–547, 63 S.Ct. 379, 385, 87 L.Ed. 443 (1943) (policy arguments against *qui tam* suits were "addressed to the wrong forum"); *see Kingsley Books, Inc. v. Brown,* 354 U.S. 436, 441, 77 S.Ct. 1325, 1328, 1 L.Ed.2d 1469 (1957) ("Whether proscribed conduct is to be visited by a criminal prosecution or by a *qui tam* action or by an injunction or by some or all of these remedies in combination, is a matter within the legislature's range of choice."). Congress has let loose a posse of *ad hoc* deputies to uncover and prosecute frauds against the government. States and state agencies, like the Center, may prefer the dignity of being chased only by the regular troops; if so, they must seek relief from Congress.

---

**1.** In contrast, where the government does take over the case, it may dismiss or settle it without the consent of the relator. 31 U.S.C. § 3730(c)(2).

**2.** We note that Congress has twice struck a new balance when it perceived that the *qui tam*

provisions of the False Claims Act were being overused, underused, or misused. *See United States ex rel. Williams v. NEC Corp.,* 931 F.2d 1493, 1497 (11th Cir.1991) (discussing 1943 and 1986 amendments).

## D.

 We hold that the United States is the real party in interest in any False Claims Act suit, even where it permits a *qui tam* relator to pursue the action on its behalf. The Center's Eleventh Amendment immunity defense therefore evaporates, because states may be sued in federal courts by the United States.[3]

The judgment of the district court is affirmed.

---

**3.** The parties engage in a side argument over whether the states' Eleventh Amendment immunity was abrogated by the False Claims Act. On this point, the Department of Justice, as *amicus,* offers its only position: states most definitely may be sued under the False Claims Act.

We think that this is a non-issue. Ordinarily, statutes authorizing suits in federal courts must explicitly displace a state's Eleventh Amendment immunity; silence leaves immunity intact. The False Claims Act is silent, but the states have no Eleventh Amendment immunity against the United States *ab initio.* Therefore, there is no reason Congress would have displaced it in the False Claims Act.