### UNITED STATES of America, ex rel. Carol Rae Cooper FOULDS, Plaintiff,

v.

### TEXAS TECH UNIVERSITY, Texas Tech University Health Sciences Center, Lubbock County Hospital District, and University Medical Center, Defendants.

No. Civ. A. 5:95–CV–135–C.

United States District Court,
N.D. Texas,
Lubbock Division.

Oct. 3, 1997.

---

Gene Storrs, Mark A. Wilson, Smith, Storrs, Wilson & McConnell, P.C., Amarillo, TX, Randall B. Pyles, Pyles & Holloway, Plainview, TX, Mary Louise Cohen, Phillips & Cohen, Washington, DC, for Plaintiff.

Toni Hunter, Chief Litigation Div., Atty. Gen. of TX, Austin, TX, for Defendants.

## MEMORANDUM OPINION AND ORDER

CUMMINGS, District Judge.

The court's order filed September 30, 1997, is **WITHDRAWN**. This order is substituted in its place.

Presently before the Court is the defendants' motion to dismiss a *qui tam* action[1] filed by relator[2] Carol Rae Cooper Foulds ("Foulds") under the False Claims Act, 31 U.S.C. § 3729 *et seq.* (West Supp.1997). Foulds alleges that Texas Tech University ("Texas Tech") and Texas Tech University Health Sciences Center ("TTUHSC")[3] submitted false claims to the United States of America (the "Government") in violation of the False Claims Act by permitting physician-residents who were ineligible for Medicare or Medicaid provider numbers, and who were not under the personal and identifiable guidance from a staff physician, to provide services to patients which were later billed to Medicare or Medicaid as "physician's services." Texas Tech and TTUHSC have moved to dismiss this lawsuit pursuant to 12(b)(1) and (6) of the Federal Rules of Civil Procedure asserting three theories: (1) the relator is precluded from suing Texas Tech and TTUHSC because of sovereign immunity; (2) the "real party in interest" exception to sovereign immunity in a *qui tam* action is unavailable as it relates to section 3730(h) of the False Claims Act;· and (3) the state is not a "person" for purposes of the False Claims Act.

Since the filing of the motion to dismiss, the court dismissed defendant Lubbock County. Therefore, Lubbock County Hospital District, University Medical Center, Texas Tech, and TTUHSC remain as defendants. The court granted a joint motion for stay and administratively closed this case after the motion to dismiss was filed so that an audit could be conducted by the Office of Inspector General. On August 19, 1997, the court lifted the stay and re-opened the case. Additionally, and important to the resolution of portions of the motion to dismiss, the Government elected not to intervene in this *qui tam* action. After reviewing the motion and briefs filed by the parties, and in light of recent case law since the administrative closure of this case, the court is of the opinion that the motion to dismiss must be **DENIED**.

## Brief History of *Qui Tam* Provisions and the False Claims Act

*Qui tam* provisions in statutes are nothing new to American jurisprudence and have been in existence for hundreds of years in England. *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 541 n. 4, 63 S.Ct. 379, 383 n. 4, 87 L.Ed. 443 (1943). They were a routine feature of early federal legislation, starting with the First Congress, and continuing through subsequent early Congresses and administrations. *See generally*, Stuart M. Gerson, *Issues and Development in Qui*

---

1. The term *"qui tam"* derives from the Latin phrase *"qui tam pro domino rege quam pro si ipso in hac parte sequitur,"* meaning, "Who sues on behalf of the King as well as for himself." Black's Law Dictionary 1251 (6th ed.1990). Thus a *qui tam* action is one "brought by an informer, under a statute which establishes a penalty for the commission or omission of a certain act, and provides that the same shall be recoverable in a civil action, part of the penalty to go to any person who will bring such action and the remainder to the state or some other institution." *Id.*

2. A "relator" is an informer plaintiff and "[a] party in interest who is permitted to institute a proceeding in the name of the People or the Attorney General when the right to sue resides solely in that official." Black's Law Dictionary 1289 (6th ed.1990).

3. Foulds' complaint actually sues Texas Tech Health Sciences Center rather than Texas Tech University Health Sciences Center. The court finds this to be a misnomer as Texas Tech University Health Sciences Center is the party who received service and one of the parties to the motion to dismiss.

*Tam Suits Under the False Claims Act, in* Citizen Suits and Qui Tam Actions: Private Enforcement of Public Policy (1996)(listing several informer statutes passed by the early Congresses). Therefore, *qui tam* suits were well established when the False Claims Act was passed in 1863.

The purpose behind the enactment of the False Claims Act was to stop the "massive frauds perpetrated by large contractors during the Civil War." *United States v. Bornstein*, 423 U.S. 303, 309, 96 S.Ct. 523, 528, 46 L.Ed.2d 514 (1976). Though the motivation of present-day *qui tam* relators has been questioned and likened to that of a bounty hunter or privateer, *Hughes Aircraft Co. v. United States ex rel. Schumer*, —— U.S. ——, ——, 117 S.Ct. 1871, 1877, 138 L.Ed.2d 135 (1997), the recruitment of paradigms with high morality was never the intent of the statute—stopping fraudulent claims and bringing rogues to justice was the motivation. Senator Howard, sponsor of the False Claims Act, opined that the False Claims Act was intended to

> hold out to a confederate a strong temptation to betray his coconspirator, and bring him to justice. . . . I have based the [provisions] upon the old-fashioned idea of holding out a temptation, and "setting a rogue to catch a rogue," which is the safest and most expeditious way I have ever discovered of bringing rogues to justice.

Cong. Globe, 37th Cong., 3d Sess. 955–56 (1863). As evidenced from the present suit, the False Claims Act's *qui tam* provision is not limited to actions brought against defense contractors who have overcharged the Government. The *qui tam* provision has been used in the past, as is presently being attempted, to stop fraud in the medical arena. *See, e.g., United States ex rel. Glass v. Medtronic*, 957 F.2d 605 (8th Cir.1992); *United States ex rel. Woodard v. Country View Care Ctr. Inc.*, 797 F.2d 888 (10th Cir. 1986).

### The False Claims Act's Current Provisions

Title 31 of the United States Code § 3730 provides for a cause of action for any person who violates 31 U.S.C. § 3729. The current version of the False Claims Act, as amended in 1986, provides that a person who commits any of several specified violations "is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person." 31 U.S.C. § 3729(a). This action may be instituted by either the Attorney General or by a private person, the relator, in order to enforce the provisions of the False Claims Act. *Id.* § 3730(a), (b)(1). Primary responsibility for enforcing the False Claims Act is vested in the Attorney General, who is required to diligently investigate violations of the False Claims Act. *Id.* § 3730(a). The False Claims Act, however, also has a *qui tam* provision that allows any private person with knowledge of a violation to bring an action in his individual capacity, as a *qui tam* relator, and on behalf of the Government. 31 U.S.C. § 3730(b). If the Attorney General institutes the suit prior to a private person with knowledge of a violation of the False Claims Act doing the same, the *qui tam* provision of the False Claims Act is not implicated.

The amount of the relator's recovery is dependant upon whether the Government elects to intervene. If the Government elects to intervene, the relator may recover, subject to some limitations, "at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim." *Id.* § 3730(d)(1). The relator's recovery is significantly higher if the Government elects not to intervene. In such a situation, the relator would recover "not less than 25 percent and not more than 30 percent of the proceeds of the action or settlement." *Id.* § 3730(d)(2).

Having explained the False Claims Act *qui tam* provision and the relator's motivation for instituting a *qui tam* action, the court turns now to the alleged false claims.

### Alleged Facts

At the time Foulds instituted this lawsuit, she was a physician and a dermatology resident employed by the dermatology clinic of the TTUHSC School of Medicine in Lubbock, Texas. Her duties required her to attend to patients admitted to University Medical Cen-

ter, which is controlled and supervised by the Lubbock County Hospital District, a political and taxing entity of Lubbock County whose board members are appointed by the Lubbock County Commissioner's Court.

Foulds began working for the TTUHSC School of Medicine in July of 1993 in various clinics operated by TTUHSC. While working in these clinics she would examine patients, make diagnoses, and prescribe treatment for patients. Although these duties were supposed to be performed under the supervision of staff physicians, Foulds alleges that when she began working in the dermatology department, those duties were being performed by the residents, without any supervision by staff physicians. Foulds alleges that staff physicians would not personally examine the patients, and most of the time, were not even in the clinic at the time those services were rendered to the patients. She contends that patient charts and Medicare/Medicaid billing forms were signed by the staff physicians after the residents rendered medical services certifying that the services were personally rendered by the staff physician or by the staff physician's employee under his or her personal supervision when such was not the case. According to Foulds, the charts of these patients were placed on the desk of the faculty member in charge for that day so that the chart and the Medicare/Medicaid billing form could be signed by a staff physician, using the staff physician's provider number, even though the staff physician never actually saw the patient or provided any personal and identifiable guidance to the residents. Foulds contends that approximately seventy patients per day, five days a week, were seen in this manner in the dermatology clinic prior to July 1994, and approximately eighty percent of these patients were Medicare/Medicaid patients.

Foulds' complaint chronicles the alleged errors and fraudulent claims of the staff physicians. According to Foulds, staff physicians failed or refused to review the patient's history; to personally examine the patients; to confirm or revise diagnoses; to determine the course of treatment to be followed; to ensure that the supervision needed by the interns and residents was furnished; and to review the patient's progress. She maintains that the dermatology department was not the only department making false and fraudulent claims. Foulds concludes that the departments of surgery and internal medicine were following the same practice and the combined fraudulent claims of the departments resulted in an estimated $21,840,000.00 in overpayments by the Government. As a result of bringing these things to the attention of Texas Tech and TTUHSC, Foulds alleges that she was retaliated against.

## Motion to Dismiss

Texas Tech and TTUHSC have moved to dismiss this action under 12(b)(1) and/or 12(b)(6). Fed.R.Civ.P. 12. Although alternatively pleaded, the standard for granting a dismissal under each is slightly, yet importantly, different. However, the factual allegations of a complaint must be accepted as true whether a motion for dismissal is made on the basis of lack of subject matter jurisdiction or for failure to state a cause of action. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Saraw Partnership v. United States,* 67 F.3d 567, 569 (5th Cir.1995); *Capital Parks v. Southeastern Adver. and Sales System,* 30 F.3d 627, 629 (5th Cir.1994).

## Standard for Dismissal under 12(b)(1)

A 12(b)(1) motion, Fed.R.Civ.P. 12, strikes at the heart of a district court's jurisdiction and must be resolved before addressing other motions, including Rule 12 motions. *Bell v. Hood,* 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). The motion is made whenever the movant asserts that the district court lacks jurisdiction over the subject matter of the lawsuit. Fed.R.Civ.P. 12(b)(1). This motion must be considered before all others because it is axiomatic that the district court loses jurisdiction to entertain other motions once it determines that it lacks jurisdiction. *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 512 (5th Cir.), *reh'g denied,* 622 F.2d 1043, *cert. denied,* 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980). In such cases, those motions become moot. *Peoples State Bank v. Garrett,* 142 F.R.D. 438, 441 (N.D.Tex.1991).

■ In the Fifth Circuit, a motion to dismiss for lack of subject matter jurisdiction may be granted on any of three separate bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Voluntary Purchasing Groups, Inc. v. Reilly,* 889 F.2d 1380, 1384 (5th Cir.1989)(citing *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981)). Because there are no disputed or undisputed facts which are relevant to the resolution of the motion to dismiss, the motion will be considered based solely upon the complaint.

### Standard for Dismissal under 12(b)(6)

■ A 12(b)(6) motion is a "lineal descendant of the common law general demurrer" and is used to test the formal sufficiency of the statements of the claims for relief. 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1355 (1990). Although it is the lineal descendant of a general demurrer, actual demurrers are no longer used and have been abolished by the Federal Rules of Civil Procedure. Fed. R.Civ.P. 7(c). Notwithstanding the history of the demurrer or its descendant, a court usually will not look beyond the four corners of the pleadings to resolve a 12(b)(6) motion as this will convert the motion to dismiss into a motion for summary judgment. See Fed. R.Civ.P. 12(b); *Fleischer v. United States Dep't of Veterans Affairs,* 955 F.Supp. 731, 734 (S.D.Tex.1997).

### Sovereign Immunity

■ Sovereign immunity involves two distinct rules which are not always separately recognized. One limits the reach of substantive law, the other, the jurisdiction of the courts. *Seminole Tribe of Florida v. Florida,* 517 U.S. 609, ——, 116 S.Ct. 1114, 1146, 134 L.Ed.2d 252 (1996)(Souter, J., dissenting)(citing 77 Harv. L.Rev. 1, 3–4 (1963)). Texas Tech and TTUHSC's motion, in so far as it relates to sovereign immunity, addresses the latter.

■ The Eleventh Amendment to the United States Constitution provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. Although the amendment expressly prohibits suits against states by citizens of other states and does not mention states being sued by their own citizens, the Supreme Court has long held that the Eleventh Amendment also bars suits by citizens of the state being sued. *See Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 99, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984); *Welch v. Texas Dep't of Highways and Public Transp.,* 483 U.S. 468, 472–73, 107 S.Ct. 2941, 2945–46, 97 L.Ed.2d 389 (1987)(plurality opinion). There are of course exceptions to this general rule. For example: a state may consent to suit in federal court; a state may waive its right to assert immunity; or the nature of the suit may determine whether sovereign immunity is available. *See, e.g., Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 1360–61, 39 L.Ed.2d 662 (1974)(holding that a state's consent to suit in federal court must be unequivocally expressed); *Clark v. Barnard,* 108 U.S. 436, 447–48, 2 S.Ct. 878, 883–84, 27 L.Ed. 780 (1883)(holding that a state may waive its sovereign immunity); *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)(recognizing an exception to the Eleventh Amendment when an individual sues a state officer in order to ensure that the officer's conduct is in compliance with federal law). Despite the above exceptions, however, a state's sovereign immunity is not an issue in a suit by the federal government against the state because the state has no sovereign immunity. *West Virginia v. United States,* 479 U.S. 305, 311, 107 S.Ct. 702, 707, 93 L.Ed.2d 639 (1987).

■ That Texas Tech and TTUHSC are state institutions and therefore enjoy Eleventh Amendment immunity, when not sued by the Government, is clear. *Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1047 n. 3

(5th Cir.1996)(citing *Henry v. Texas Tech Univ.*, 466 F.Supp. 141, 144–46 (N.D.Tex. 1979).[4] What is not entirely clear is whether states or state agencies enjoy the same immunity in a *qui tam* action when the Government has elected not to intervene. Although apparently *res nova* in the Fifth Circuit, the Fourth Circuit has addressed this issue and determined that sovereign immunity is unavailable when the Government elects not to join in the *qui tam* action because the Government is the real party in interest.[5] *United States ex rel. Milam v. University of Texas M.D. Anderson Cancer Ctr.*, 961 F.2d 46 (4th Cir.1992). The Second Circuit has held that the Government is the real party in interest but has not explicitly stated that sovereign immunity is unavailable to a state defendant, presumably because it determined that the relator was not the original source of information and therefore lacked standing. *United States ex rel. Kreindler v. United Technologies Corp.*, 985 F.2d 1148 (2d Cir.) *cert. denied*, 508 U.S. 973, 113 S.Ct. 2962, 125 L.Ed.2d 663 (1993).

Despite the holdings of these circuits, however, Texas Tech and TTUHSC assert that the False Claims Act's *qui tam* provision cannot be enforced against them because of the Supreme Court's recent decision in *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). They wish to have this court find that *Seminole Tribe of Florida*, though not express, was a *de facto* overruling of the Fourth and Second Circuits' holdings. For the reasons that follow, this court finds their argument unpersuasive.

In *Seminole Tribe of Florida*, the Supreme Court addressed the issue of whether the "Eleventh Amendment prevent[s] Congress from authorizing suits by Indian tribes against States for prospective injunctive relief to enforce legislation enacted pursuant to the Indian Commerce Clause." *Id.* at ——, 116 S.Ct. at 1122. In holding that the Eleventh Amendment did prevent such suits, the Supreme Court engaged in a two step analysis. First, the Court determined whether Congress' intent to abrogate the states' immunity from suit was unmistakably clear." *Id.* at ——, 116 S.Ct. at 1123. After answering the first prong in the affirmative, the Court went on to the second step. The Court then asked whether the act was passed " 'pursuant to a valid exercise of power.' " *Id.* at ——, 116 S.Ct. at 1124 (quoting *Green v. Mansour*, 474 U.S. 64, 68, 106 S.Ct. 423, 426, 88 L.Ed.2d 371 (1985)). Finding that it was not, the Court determined that it was without jurisdiction. *Id.* at —— – ——, 116 S.Ct. at 1131–32.

Texas Tech and TTUHSC's motion to dismiss asserts that the *qui tam* provision of the False Claims Act is not unmistakably clear in abrogating a state's Eleventh Amendment rights, and therefore, does not pass the first step of the analysis found in *Seminole Tribe of Florida*. Texas Tech and TTUHSC's reliance upon *Seminole Tribe of Florida* is misplaced and this court need not address its holding because the defense of sovereign immunity is unavailable. This court is of the opinion that the Fourth Circuit's holding in *United States ex rel. Milam* is sound and should be followed. The Government is the real party in interest to this *qui tam* action. Therefore, sovereign immunity is unavailable and the Supreme Court's analysis and holding in *Seminole Tribe of Florida* has no bearing upon this case.

Therefore, Texas Tech and TTUHSC's motion to dismiss for lack of subject matter

---

4. The text of *Henry v. Texas Tech University*, 466 F.Supp. 141 (N.D.Tex.1979), refers to both Texas Tech University and Texas Tech University School of Medicine enjoying sovereign immunity. This privilege applies to Texas Tech University Health Sciences Center as well, as the Texas legislature changed the name of Texas Tech University School of Medicine to Texas Tech University Health Sciences Center. *See* Act of May 18, 1979, 66th Leg., R.S., ch. 319, § 1, 1979 Tex. Gen. Laws 724, 724.

5. In *Searcy v. Philips Electronics North America Corp.*, 117 F.3d 154 (5th Cir.1997), the Fifth Circuit, in *dictum*, seemed to imply that it would follow the Fourth Circuit's holding in *United States ex rel. Milam v. University of Texas M.D. Anderson Cancer Center*, 961 F.2d 46 (4th Cir. 1992). The focus of the *Searcy* court, however, was not on whether the Government was a real party in interest during the trial, but whether the Government was a party for appellate purposes even when it elected not to intervene but wished to challenge a settlement between the relator and defendant. *Searcy*, 117 F.3d at 157, 158.

jurisdiction, as it relates to sovereign immunity, is **DENIED.**

**Eleventh Amendment and Section 3730(h)**

Texas Tech and TTUHSC argue that the anti-retaliation provision of the False Claims Act, § 3730(h), does not waive their sovereign immunity, even if this court finds that the Government is the real party in interest, because there can be no injury to the Government in a retaliation claim, and therefore, the real-party-in-interest analysis does not apply. Although no case was cited for this bold assertion, two cases were cited for the proposition that subsection (h) of section 3730 does not abrogate a state's Eleventh Amendment immunity. *United States ex rel. Moore v. University of Michigan,* 860 F.Supp. 400 (E.D.Mich.1994); *Wilkins ex rel. United States v. State of Ohio,*[6] 885 F.Supp. 1055 (S.D.Ohio 1995). Notwithstanding these cases and their holdings, they must be considered in light of the rationale behind the False Claims Act.

The Fifth Circuit has well stated the purpose behind section 3730(h) and the False Claims Act—to discourage fraud against the Government and to encourage those with knowledge of fraud to come forward. *Robertson v. Bell Helicopter Textron, Inc.,* 32 F.3d 948, 951 (5th Cir.1994), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1110, 130 L.Ed.2d 1075 (1995). If the Government is the real party in interest, then there is no logical reason why sovereign immunity should prevent a relator from utilizing section 3730(h) when a state or state agency is the defendant. If section 3730(h) is eviscerated, then the Government is truly the one that will suffer the greatest harm. This is because a "whistleblower" will not be encouraged to come forward with information for fear of being retaliated against. Accordingly, Texas Tech and TTUHSC's 12(b)(1) motion is **DENIED.**

### A State Must be a "Person" Within the Meaning of the False Claims Act

Having addressed the issue of whether Texas Tech and TTUHSC are im-

mune from suit because of their status as state institutions, and having found that they are not entitled to sovereign immunity, the court turns now to unraveling the mystery of what is a "person" for purposes of the False Claims Act. The False Claims Act does not define the word person. *See* 31 U.S.C. § 3729. Ordinarily, " 'in common usage, the term "person" does not include the sovereign, [and] statutes employing the [word] are ordinarily construed to exclude it.' " *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 64, 109 S.Ct. 2304, 2308, 105 L.Ed.2d 45 (1989) (holding that "person" in 42 U.S.C. § 1983 does not include states)(quoting *Wilson v. Omaha Indian Tribe,* 442 U.S. 653, 667, 99 S.Ct. 2529, 2537, 61 L.Ed.2d 153 (1979)). Although this "clear statement rule," as it has been called, would seem to indicate that a state or state agency cannot be sued under the False Claims Act, this would be an illogical step to make in light of this court's finding that the Eleventh Amendment does not bar Fould's suit against Texas Tech and TTUHSC. The Fifth Circuit's recent decision in *Searcy,* 117 F.3d at 156, indicates that the Fourth Circuit's holding— that the Government is the real party in interest—is correct and will be followed in the future. Therefore, to find that Texas Tech and TTUHSC are not persons under this *qui tam* statute would be allowing them to assert sovereign immunity again, this time bringing it through the back door. Until the Fifth Circuit indicates otherwise, this court is unwilling to find that Texas Tech and TTUHSC are not persons under the statute. Therefore, the court **DENIES** Texas Tech and TTUHSC's 12(b)(6) motion.

**SO ORDERED.**

---

6. Usually an *"ex rel."* lawsuit is captioned with the governmental entity, usually the United States of America or a state, preceding the name of the relator, such that the caption of this case would normally be *United States ex rel. Wilkins v. State of Ohio.* Black's Law Dictionary 582 (6th ed.1990).