# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 97-1940EA

_____

| | | |
|---|---|---|
| United States of America ex rel. Frankie Carolyn Rodgers and Delbert O. Lewis, | * * * * | |
| Plaintiffs - Appellees; | * * * | |
| United States of America, | * * | |
| Intervenor on Appeal, | * * | |
| v. | * * | On Appeal from the United States District Court |
| State of Arkansas and Arkansas Department of Education, | * * * | for the Eastern District of Arkansas. |
| Defendants - Appellants, | * * * | |
| Little Rock School District; Benton School District; Magnet Cove School District; Hope School District; Malvern School District; and Gurdon School District, | * * * * * | |
| Defendants. | * | |

_____

Submitted: June 10, 1998
Filed: September 4, 1998

_____

Before RICHARD S. ARNOLD and MORRIS SHEPPARD ARNOLD, Circuit Judges, and PANNER,[1] District Judge.

_____

RICHARD S. ARNOLD, Circuit Judge.

Two Arkansas residents brought this qui tam action against the State of Arkansas and the Arkansas Department of Education for allegedly obtaining federal education funding by filing false claims of compliance with federal civil-rights laws, in violation of the False Claims Act, 31 U.S.C. §§ 3729 - 3733 (1994). The State and its Department of Education moved to dismiss the claim, asserting that it is barred by the Eleventh Amendment to the United States Constitution. The District Court denied the motion, and this appeal followed. We affirm.

I.

Arkansas residents Frankie Carolyn Rodgers, a former public school teacher and counselor, and Delbert O. Lewis, a former employee of the Arkansas Division of Rehabilitation Services, undertook an investigation into whether the State, its Department of Education, and several Arkansas school districts were in compliance with federal civil-rights laws. Rodgers and Lewis allege that the defendants have falsely claimed compliance with § 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 (1994), and Titles I and II of the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213 (1994). Assurance of compliance is a prerequisite to the continued receipt of certain federal funds. Acting on their belief that the State, including legislators and auditors, and several school districts have misrepresented compliance with the laws since 1985, Rodgers and Lewis brought suit as qui tam

_____

[1]The Hon. Owen M. Panner, United States District Judge for the District of Oregon, sitting by designation.

relators under the Federal Claims Act. As permitted by the statute, 31 U.S.C. § 3730(b)(4)(B), the United States allowed the relators to prosecute the case and did not itself become a party.

Asserting immunity from suit under the Eleventh Amendment, the State and the Department moved to dismiss the complaint. The District Court[2] determined that the State does not enjoy Eleventh Amendment immunity from False Claims Act suits by qui tam relators, and denied the motion to dismiss. The State and the Department appeal from the denial of the motion to dismiss, and the District Court stayed the proceeding pending the outcome here. We have jurisdiction because denials of motions to dismiss on Eleventh Amendment immunity grounds are immediately appealable. Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 147 (1993).

## II.

On appeal, the State acknowledges that the United States is not subject to the Eleventh Amendment prohibition on federal jurisdiction over "commence[ment] or prosecut[ion] [of a suit] against one of the United States by Citizens of another State . . .," or over a suit against a State by one of its own citizens. U.S. Const. amend. XI; Mancuso v. New York State Thruway Auth., 86 F.3d 289 (2d Cir.), cert. denied, 117 S. Ct. 481 (1996). See also United States v. Mississippi, 380 U.S. 128, 138-41 (1965). They contend that when the United States declines to prosecute a violation of the False Claims Act, the suit is not brought by the United States for Eleventh Amendment purposes. Under this reasoning, the qui tam relator is characterized as a citizen, and the Eleventh Amendment bars the suit against the state.

---

[2]The Hon. William R. Wilson, Jr., United States District Judge for the Eastern District of Arkansas.

Section 3729 of the False Claims Act provides, in pertinent part:

(a)     Liability for certain acts.--Any person who--

(1)     knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval;

(2)     knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;

(3)     conspires to defraud the Government by getting a false or fraudulent claim allowed or paid; . . .

is liable to the United States Government for a civil penalty . . . plus 3 times the amount of damages which the Government sustains because of the act of that person . . ..

Section 3730, the qui tam[3] provision of the False Claims Act, states in pertinent part:

(b)     Actions by Private Persons.--(1)  A person may bring a civil action for a violation of section 3729 for the person and for the United States Government.  The action shall be brought in the name of the Government. The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting.

---

[3]Qui tam is short for the Latin phrase, "qui tam pro domino rege quam pro se ipso in hac parte sequitur:" "who sues in this case on behalf of our lord the King as well as on his behalf."

A great deal of Section 3730 establishes as superior the role of the government in the prosecution of qui tam suits. For example, the government may intervene in the action, and in the event that it elects not to do so within an initial 60-day period, it may, for good cause, intervene at a later date. 31 U.S.C. §§ 3730(b)(5) and (c)(3). Additionally, "[i]f the Government proceeds with the action, it . . . shall not be bound by an act of the person bringing the action." 31 U.S.C. § 3730(c)(1). The Government also has the power to "dismiss [or settle] the action notwithstanding the objections of the person initiating the action . . .," subject only to notice and a hearing for the qui tam relator. The government will collect the bulk of any damages awarded, and in no case less than 70%, regardless of who prosecutes the suit. 31 U.S.C. §§ 3730(c)(2)(A) and 3730(c)(2)(B).

We hold that a qui tam action under this Act is a suit by the United States for Eleventh Amendment immunity purposes. The focus of the Act is on exposing fraud on the government and recovering resulting government losses. The qui tam provisions facilitate this process, but they do not alter the underlying character of the action as one for the aggrieved party as defined by the statute. See Marvin v. Trout, 199 U.S. 212, 224-26 (1905). The qui tam mechanism exists to motivate individuals to further the interest of the government in remaining free from frauds perpetrated against it. Confronting the same question before us, the Fourth Circuit stated, and we agree, that "the structure of the qui tam procedure, the extensive benefit flowing to the government from any recovery, and the extensive power the government has to control the litigation weigh heavily against [the defendant]." United States ex rel. Milam v. University of Texas M.D. Anderson Cancer Ctr., 961 F.2d 46, 49 (4th Cir. 1992).

Other circuits have held similarly. "Qui tam relators cannot and do not sue for FCA violations on their own behalf. Rather, they sue on behalf of the government as agents of the government, which is always the real party in interest." United States ex rel. Hyatt v. Northrop Corp., 91 F.3d 1211, 1217 n.8 (9th Cir. 1996) (citing United States ex rel. Killingsworth v. Northrop Corp., 25 F.3d 715, 720 (9th Cir. 1994)

(citations omitted). See also United States v. ex rel. Hall v. Tribal Dev. Corp. 49 F. 3d 1208, 1213 (7th Cir. 1995). Many of our sister circuits have rejected challenges to a qui tam relator's action on similar reasoning. "In a qui tam action, the plaintiff sues on behalf of and in the name of the government and invokes the standing of the government resulting from the fraud injury." United States ex rel. Kreindler & Kreindler v. United Technologies Corp., 985 F. 2d 1148, 1154 (2d Cir.), cert. denied, 508 U.S. 973 (1993) (citations omitted). In so stating, the Second Circuit drew from an earlier case in which it stated "although qui tam actions allow individual citizens to initiate enforcement against wrongdoers who cause injury to the public at large, the Government remains the real party in interest." Minotti v. Lensink, 895 F.2d 100, 104 (2d Cir. 1990). In a similar vein, the Fourth Circuit in Milam stated "[w]e could not lightly conclude that the party upon whose standing the justiciability of the case depends is not the real party in interest." 961 F.2d at 49.

Finally, we address the State's and the Department's argument that our recent decision in Moad v. Arkansas State Police Department, 111 F.3d 585 (8th Cir. 1997), is dispositive of an outcome in their favor. In Moad, we held that the Eleventh Amendment is a bar to a suit against a state for violations of the Fair Labor Standards Act. Our decision was required by that of the Supreme Court in Seminole Tribe of Florida v. Florida, 517 U.S. 44 (1996), that the Interstate Commerce Clause is an impermissible basis for the abrogation of state immunity under the Eleventh Amendment. Moad is not controlling. There, the real party in interest was a private person. Here, it is the United States. The State and its agencies are not entitled to Eleventh Amendment immunity.

The judgment is affirmed.

PANNER, District Judge, dissenting.

The Eleventh Amendment provides that:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, <u>commenced or prosecuted</u> against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

(Emphasis added.) This action was commenced, and is being prosecuted, by two private citizens. The United States was not consulted before this action was filed. It did not screen the claims before filing to ensure that prosecution was warranted, and it has since declined to prosecute this action in its own right.[1] If the United States intervenes, it is not bound by anything the relators have done. 31 U.S.C. § 3730(c)(1). Unless it intervenes, the United States is not liable for any costs or attorney fees awarded to the defendants. 31 U.S.C. § 3730(f) and (g) (distinguishing between actions brought by the relator and those filed by the "United States"). The United States has little control over the conduct of this litigation, unless it intervenes as a party or by moving to dismiss the action. *See generally* 31 U.S.C. § 3730.

Based upon the decisions cited in the majority opinion, the majority understandably concludes that this action against a state is not barred by the Eleventh Amendment. However, those cases primarily involve issues of standing, or are premised upon other decisions that involve standing. They speak in terms of the "real party in interest."

---

[1]The United States has intervened in this appeal for the limited purpose of defending the constitutionality of the False Claims Act. *See* Motion of United States to Intervene as of Right Under 28 U.S.C. § 2403. The United States has not intervened in the underlying action pursuant to 31 U.S.C. § 3730.

*United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743 (8th Cir. 1993), discusses the relationship between the United States and the relator in an action under the False Claims Act:

> [T]he FCA effectively assigns the government's claims to qui tam plaintiffs such as Kelly, who then may sue based upon an injury to the federal treasury. Under this theory of standing, the FCA's qui tam provisions operate as an enforceable unilateral contract. The terms and conditions of the contract are accepted by the relator upon filing suit. If the government declines to prosecute the alleged wrongdoer, the qui tam plaintiff effectively stands in the shoes of the government.

*Id.* at 748. Others have likened the relationship to an assignment of a contract or chose in action, or a collection agency, bounty hunter, or contingency fee relationship. *See, e.g., United States ex rel. Milam v. University of Texas M.D. Anderson Cancer Center*, 961 F.2d 946, 949 (4th Cir. 1992) (endorsing contingency fee analysis).

"Standing in the shoes of the assignor" may suffice to confer standing to sue or to overcome a contractual defense, but only the United States itself should be able to pierce a state's sovereign immunity, not its collection agencies, assignees, bounty hunters, or delegees. *Milam*'s answer was that:

> Congress has let loose a posse of ad hoc deputies to uncover and prosecute frauds against the government. States and state agencies . . . may prefer the dignity of being chased only by the regular troops; if so, they must seek relief from Congress.

*Id.* at 49. That misses the mark. It is not a question of "dignity" but of whether the limited waiver of sovereign immunity, that is inherent in the design of the Constitution, extends to self-appointed "ad hoc deputies" who are largely beyond the supervision of the United States and for whose actions the United States is not accountable. "The consent, 'inherent in the convention,' to suit by the United States -- at the instance and under the control of responsible federal officers -- is not consent to suit by anyone whom the United States might select; and even consent to suit by the United States for a particular person's benefit is not consent to suit by that person himself." *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 785-86 (1991).

The only case cited by the majority that is directly in point is *Milam*, *supra*. While that decision is well written by Judge Hall, it does not persuade me that the Eleventh Amendment can be overcome so easily.

The Supreme Court has expressed reservations about limiting the Eleventh Amendment in other types of cases. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996) and *Blatchford*, *supra*.

The present action is distinguishable from *United States ex rel. Zissler v. Regents of the University of Minnesota*, No. 97-4099MN, also decided today. In *Zissler*, the United States has intervened and is prosecuting that action at the instance, and under the control, of responsible federal officials. The same cannot be said of the claims here. I therefore respectfully dissent.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-9-