# CIRCUIT COURT OF THE CITY OF RICHMOND

Commonwealth of Virginia

v.

Frank A. Woelfl
and Viola M. Woelfl

December 21, 2001

Case No. HQ-1210-1

BY JUDGE MELVIN R. HUGHES, JR.

Under Va. Code § 18.2-258.01 "any citizen where … a nuisance described in § 18.2-258 exists, may … maintain a suit in equity in the name of the Commonwealth to enjoin the same. …"

John R. Butcher, Esq., in his capacity as a private citizen filed the above styled action invoking § 18.2-258.01 seeking to enjoin Frank and Viola Woelfl from maintaining a common nuisance on their property. The acts sought to be enjoined, referenced in § 18.2-258, is maintaining a common nuisance on property whose owner knowingly permits persons involved in the sale, possession, and use of illegal drugs to frequent the property. The Woelfls have filed Defendants' Motion to Dismiss and to Enforce Settlement Agreement, which is before the court for decision. The following is an outline of the salient events to this point.

The Woelfls own property at 3916 Chamberlayne Avenue in the City of Richmond, known as the Redwood Apartments. Defendant Frank Woelfl manages the property. Since early 1995, neighbors have complained to the Woelfls about problems with drugs and prostitution on the property. On June 7, 2001, John R. Butcher filed the above-styled suit in equity against the Woelfls in the name of the Commonwealth, pursuant to Virginia Code § 18.2-258.01. On August 6, 2001, a grand jury returned indictments against

the Woelfls alleging criminal violations of Virginia Code § 18.2-258. Thereafter, three of the indicted charges were dismissed. The remaining criminal charge was set for hearing on November 29, 2001.

On November 25, 2001, the Woelfls and the Commonwealth, through an Assistant Commonwealth's Attorney for the City of Richmond entered into a Settlement Agreement. The Agreement provides that the Commonwealth would (1) move to dismiss the criminal charges pending against the Woelfls, (2) join the Woelfls' petition for expungement of criminal records, and (3) dismiss with prejudice the above-styled equity suit. The Commonwealth also agreed to file a new, separate equity suit alleging the Woelfls' property is a common nuisance. Once filed, the Woelfls would deny the same and the parties would jointly pray for the entry of an Agreed Consent Decree. By the terms of the Consent Decree, the parties expressed the intent that the new proceeding would be the sole relief to which the parties shall be entitled in any of the pending cases, including this case. A Consent Decree was signed by counsel for the Commonwealth and counsel for the Woelfls. The Settlement Agreement specifically incorporates the Consent Decree by reference.

In the Consent Decree, the Woelfls agree to a list of improvements to the property, including a request for a CPTED survey and compliance with the recommendations of such survey. As well, the Woelfls agree to strictly screen prospective tenants and provide "house rules" to prospective tenants. The Woelfls further agree to require rental agreements from tenants and a lease addendum prohibiting drug or other criminal activity. Finally, the Woelfls promise to evict tenants violating the various terms. The Commonwealth has now filed papers opposing the dismissal of this case arguing that the Settlement Agreement should be treated as a plea agreement that was generated during a criminal matter. The Commonwealth further argues that it is entitled to withdraw from the Agreement until and unless the Woelfls perform. Thus, the Commonwealth argues, this action can proceed.

Butcher, who instituted this proceeding in the Commonwealth's name, also opposes dismissal. In summary, he argues that the Settlement Agreement is both unlawful and not in keeping with the public interest. Butcher asserts that the Commonwealth's Attorney is not a party to the proceedings and cannot commandeer the case, as the statute permits a citizen to initiate the proceedings without participation by the Commonwealth's Attorney. Further, he contends the Consent Decree is unenforceable because it authorizes mediation to resolve any future violations, has no requirement for monitoring compliance by the Woelfls, and contains an indemnification provision which is void in that it waives the sovereign immunity of the Commonwealth, among other things.

Whether the Settlement Agreement is or is not ill-advised or some of its provisions illegal or *ultra vires* are questions that are not before the court. The immediate issue is whether the Settlement Agreement bars further prosecution of this case. More specifically, the questions are who is the real party in interest, Butcher or the Commonwealth through the Commonwealth's Attorney, who negotiated and entered into the Settlement Agreement with the Woelfls, and whether dismissal of this action is now required. The court will address these issues in inverse order.

The Settlement Agreement contains an explicit provision regarding the resolution of this case. That provision, number 3, provides:

(3) Dismissal of Injunction Suit. The Commonwealth agrees to dismiss with prejudice the chancery matter Commonwealth of Virginia v. Frank A. Woelfl and Viola M. Woelfl 760CH01Q012110-00. The Commonwealth shall move for such dismissal at its first opportunity following the execution of this agreement and shall take every action necessary or appropriate to secure the dismissal with prejudice of this lawsuit, even over the objection of any relator, citizen, or citizen group.

However, despite this direct and explicit language the Commonwealth now opposes any dismissal arguing, mainly, that the Agreement is a plea agreement and is not supported by consideration. First, there is nothing in the various documents referred to or signed by the Assistant Commonwealth's Attorney and the Woelfls that mentions entry of a plea of guilty.

Second, in determining the enforceability of a settlement agreement, the Court must look for the essential elements of a valid contract, which must exist to support a binding compromise settlement. *Montagna v. Holiday Inns*, 221 Va. 336, 269 S.E.2d 838 (1980). Moreover, since the parties do not dispute that the terms of the Settlement Agreement are clear and unambiguous, the intent of the parties is to be determined within the "four corners" of the Agreement. *MW Builders of Kansas v. VT Properties*, 246 Va. 255, 435 S.E.2d 145 (1993). As noted, the Commonwealth argues that there is insufficient consideration in the Settlement Agreement to qualify as a contract. However, "it is well established that mutual promises in a contract constitute valuable consideration." *Price v. Taylor*, 251 Va. 82, 85, 466 S.E.2d 87 (1996) (citations omitted). In the case at hand, the Commonwealth promised to dismiss with prejudice specific criminal cases and the above-styled equity suit in exchange for the Woelfls' promises to implement the procedures and practices enumerated in detail in the Consent Decree that was incorporated by reference into the Settlement Agreement. Both parties have

"promise[d] to forebear the exercise of a legal right" and thus have supplied adequate consideration to support a contract. *Alexakis v. Mallios*, 261 Va. 425, 430 (2001). The Settlement Agreement contains all the essential elements of a valid and enforceable contract. Moreover, "[o]nce a competent party makes a settlement and acts affirmatively to enter such settlement, second thoughts at a later time upon the wisdom of other settlement do not constitute good cause for setting it aside." *Id.*

Next, there is the matter of whether the Settlement Agreement binds Butcher, the one who instituted this proceedings under the authorization of Va. Code § 18.01-258.01 as "any citizen." It is evident that although Butcher knew of the negotiations between the Woelfls and the Commonwealth, he did not participate in such negotiations or authorize the final outcome.

A private person (a relator) who has sustained a special injury as the result of an act that has also caused an injury to the public at large can sue in the name of the Commonwealth for private benefit. W. Hamilton Bryson, *Virginia Civil Procedure*, 181 (3d ed. 1997). In the current case, the General Assembly has established by statute the right of a citizen, here Butcher, to institute proceedings in the name of the Commonwealth to enjoin a common nuisance.

Relator actions are the civil counterparts to criminal informations qui tam by private informers to enforce penal statutes. *Id.* While the Virginia Supreme Court has not defined the real party in interest in a suit under § 18.2-258.01, the United States Court of Appeals for the Fourth Circuit has discussed the issue in a similar context. In the *United States ex rel. Milam v. University of Texas M. D. Anderson Cancer Center*, 961 F.2d 46 (4th Cir. 1992), the question arose in a suit brought by a private citizen to enforce a federal criminal statute. The Court in *Milam* ruled that the United States was the real party interest. Notably in *Milam*, the government exercised its statutory right to allow the relator to prosecute the case without intervening.

Among other reasons for determining that the government was the real party in interest, the court cited the federal statute allowing qui tam suits to be brought by individuals only in the name of the government. *Id.* at 48. As well, the court stated "the relator has no personal stake in the damages sought, all of which, by definition, were suffered by the government." *Id.* at 49.

The Fourth Circuit concluded that since the government was the real party in interest in a qui tam action, even where the government allows the relator to pursue the action, the case may not be settled or voluntarily dismissed without the government's consent. *Id.* On the other hand, "where the government does take over the case, it may dismiss or settle it without the consent of the relator." *Id.*

While the Fourth Circuit's opinion does not control the current case, *Milam* is similar on several points to the case at bar. Here, § 18.2-258.01 only allows a suit by an individual where it is brought in the name of the Commonwealth. The private citizen has no standing to bring suit in his own name. Indeed, Butcher does not allege any interference of any private right in himself. Rather, the Bill of Complaint asserts only rights against the Woelfls common to the public as a whole. The suit is to enjoin a common nuisance, which by definition is harmful to the public at large, not particularly to an individual citizen. Using the *Milam* reasoning, the Commonwealth is the real party in interest.

Here, by the terms of the Settlement Agreement, the parties expressed an intent that the Commonwealth's Attorney would make an appearance, move to dismiss this action, and then initiate another proceeding with a proposed Consent Decree to that new litigation to follow. Instead, for reasons that the court finds have no support, the Commonwealth has failed to comply with that which it promised the Woelfls.

Accordingly, for the above reasons, the court will enter an order dismissing this action and thereby enforcing that part of the Settlement Agreement that requires that action.